## DAVIS v. WELLS.

1. The rule, requiring notice by the guarantee of his acceptance of a guaranty and his intention to act under it, applies only where, the instrument being, in legal effect, merely an offer or proposal, such acceptance is necessary to that mutual assent, without which there can be no contract.

2. If made at the request of the guarantee, the guaranty becomes the answer of the guarantor to a proposal, and its delivery to the guarantee or for his use completes the communication between them and constitutes a contract. The same result follows where the agreement to accept is contemporaneous with the guaranty and constitutes its consideration. It must be so wherever there is a valuable consideration other than the expected advances to be made to the principal debtor, which, at the time the undertaking is given, passes from the guarantee to the guarantor; and equally so where the instrument is in the form of a bilateral contract, which binds the guarantee to make the contemplated advances, or otherwise creates by its recitals a privity between him and the guarantor. In each of these cases, their mutual assent is either expressed or necessarily implied.

3. A guaranty, if expressed to be in consideration of one dollar paid to the guarantor by the guarantee, the receipt of which is therein acknowledged, is not an unaccepted proposal, but is, *without notice of acceptance*, binding on delivery.

4. Where a guaranty declares that the guarantor thereby guaranties unto the guarantee, unconditionally at all times, any advances, &c., to a third per-

son, notice of demand of payment and of the default of the debtor, as well as notice of the amount of the advances when made, is waived, although either or both would otherwise be required.

5. But a failure or a delay in giving such notice, if required, is no defence to an action upon the guaranty, unless the guarantor has thereby sustained loss or damage, and then only to the extent thereof.

6. The contract of guaranty, although that of a surety, is to be construed liberally and in furtherance of its spirit, to promote the use and convenience of commercial intercourse.

ERROR to the Supreme Court of the Territory of Utah.
The facts are stated in the opinion of the court.

*Mr. James M. Woolworth* for the plaintiffs in error.
*Mr. Samuel Shellabarger* and *Mr. Jeremiah M. Wilson, contra.*

MR. JUSTICE MATTHEWS delivered the opinion of the court.

The action below was brought by Wells, Fargo, & Co., against the plaintiffs in error, upon a guaranty, in the following words: —

" For and in consideration of one dollar to us in hand paid by Wells, Fargo, & Co. (the receipt of which is hereby acknowledged), we hereby guarantee unto them, the said Wells, Fargo, & Co., unconditionally at all times, any indebtedness of Gordon & Co., a firm now doing business at Salt Lake City, Territory of Utah, to the extent of and not exceeding the sum of ten thousand dollars ($10,000) for any overdrafts now made, or that may hereafter be made at the bank of said Wells, Fargo, & Co.

" This guaranty to be an open one, and to continue one at all times to the amount of ten thousand dollars, until revoked by us in writing.

" Dated, Salt Lake City, 11th November, 1874.

" In witness whereof we have hereunto set our hands and seals the day and year above written.

" ERWIN DAVIS.     [SEAL.]<br>" J. N. H. PATRICK.  [SEAL.]

" Witness: J. GORDON."

The answer set up, by way of defence, that there was no notice to the defendants from the plaintiffs of their acceptance of the guaranty, and their intention to act under it; and no notice after the account was closed, of the amount due thereon; and no notice of the demand of payment upon Gordon &

Co., and of their failure to pay within a reasonable time there-after. But there was no allegation that by reason thereof any loss or damage had accrued to the defendants.

On the trial it was in evidence, that this guaranty was executed by the defendants below, and delivered to Gordon on the day of its date, for delivery by him to Wells, Fargo, & Co., which took place on the same day; that Gordon & Co. were then indebted to the plaintiffs below for a balance of over $9,000 on their bank account; that their account continued to be overdrawn, Wells, Fargo, & Co. permitting it on the faith of the guaranty, from that time till July 31, 1875, when it was closed, with a debit balance of $6,200; that the account was stated and payment demanded at that time of Gordon & Co., who failed to make payment; that a formal notice of the amount due and demand of payment was made by Wells, Fargo, & Co., of the defendants below, on May 26, 1876, the day before the action was brought. There was no evidence of any other notice having been given in reference to it; either that Wells, Fargo, & Co. accepted it and intended to rely upon it, or of the amount of the balance due at or after the account was closed; and no evidence was offered of any loss or damage to the defendants by reason thereof, or in consequence of the delay in giving the final notice of Gordon & Co.'s default.

The defendants' counsel requested the court, among others not necessary to refer to, to give to the jury the following instructions, numbered first, second, third, and fifth: —

1. If the jury believes from the evidence that the guaranty sued upon was delivered by the defendants to Joseph Gordon, and not to the plaintiff, but was afterwards delivered to the latter by Joseph Gordon, or by Gordon & Co., it became and was the duty of Wells, Fargo, & Co. thereupon to notify the defendants of the acceptance of said guaranty, and their intention to make advancements on the faith of it; and, if they neglected or failed so to do, the defendants are not liable on the guaranty, and your verdict must be for the defendants.

2. If Wells, Fargo, & Co. made any advancements to Gordon & Co. on overdrafts on the faith of said guaranty, it became and was the duty of plaintiff to notify the defendants, within a reasonable time after the last of said advancements of the

amount advanced under the guaranty, and if the plaintiff failed or neglected so to do, it cannot recover under the guaranty, and your verdict must be for the defendants.

3. What is a reasonable time in which notice should be given is a question of law for the court. Whether notice was given is one of fact for the jury. The court, therefore, instructs you that if notice of the advancements made under said guaranty was not given until after the lapse of twelve months or upward from the time the last advancement was made to Gordon & Co., this was not in contemplation of law a reasonable notice, and your verdict, if you so find the fact to be, should be for the defendants.

5. Before any right of action accrued in favor of plaintiff under said guaranty, it was incumbent on it to demand payment of the principal debtor, Gordon & Co., and on their refusal to pay, to notify the defendants. If the jury, therefore, find that no such demand was made, and no notice given to the defendants, the plaintiff cannot recover upon the guaranty.

The court refused to give each of these instructions, and the defendants excepted.

The following instructions were given by the court to the jury, to the giving of each of which the defendants excepted:

1. You are instructed that the written guaranty offered in evidence in this case is an unconditional guaranty by defendants, of any and all overdrafts, not exceeding in amount $10,000, for which said Gordon & Co. were indebted to the plaintiff at the date of the commencement of this suit. If the jury believe from the evidence that said guaranty was by said defendants, or by any one authorized by them to deliver the same, actually delivered to plaintiff, and that plaintiff accepted and acted on the same, such delivery, acceptance, and action thereon by plaintiff bind the defendants, and render the defendants responsible in the action for all overdrafts upon plaintiff made by Gordon & Co. at the date of said delivery of said guaranty, and since, and which were unpaid at the date of the commencement of this suit, not exceeding $10,000.

2. The jury are instructed that the written document under seal, offered in evidence in this case, implies a consideration, and constitutes an unconditional guaranty of whatever over-

draft, if any, not exceeding $10,000, which the jury may find from the evidence that Gordon & Co. actually owed the plaintiff at the date of the bringing of this suit; and, further, if you believe from the evidence that an account was stated of such overdraft between plaintiff and J. Gordon & Co., then the plaintiff is entitled to interest on the amount found due at such statement, from the date thereof, at the rate of ten per cent per annum.

These exceptions form the basis of the assignment of errors.

The charge of the court first assigned for error, and its refusal to charge upon the point as requested by the plaintiffs in error, raise the question whether the guaranty becomes operative if the guarantor be not, within a reasonable time, informed by the guarantee of his acceptance of it and intention to act under it.

It is claimed in argument that this has been settled in the negative by a series of well-considered judgments of this court.

It becomes necessary to inquire precisely what has been thus settled, and what rule of decision is applicable to the facts of the present case.

In *Adams* v. *Jones* (12 Pet. 207, 213), Mr. Justice Story, delivering the opinion of the court, said : " And the question which, under this view, is presented, is whether, upon a letter of guaranty, addressed to a particular person or to persons generally, for a future credit to be given to the party in whose favor the guaranty is drawn, notice is necessary to be given to the guarantor that the person giving the credit has accepted or acted upon the guaranty and given the credit on the faith of it. We are all of the opinion that it is necessary ; and this is not now an open question in this court, after the decisions which have been made in *Russell* v. *Clarke*, 7 Cranch, 69 ; *Edmonston* v. *Drake*, 5 Peters' Rep. 624 ; *Douglass* v. *Reynolds*, 7 Peters' Rep. 113; *Lee* v. *Dick*, 10 Peters, 482; and again recognized at the present term in the case of *Reynolds* v. *Douglass*. It is in itself a reasonable rule, enabling the guarantor to know the nature and extent of his liability ; to exercise due vigilance in guarding himself against losses which might otherwise be unknown to him ; and to avail himself of the appropriate means in law and equity to compel the other parties to discharge him

from further. responsibility. The reason applies with still greater force to cases of a general letter of guaranty; for it might otherwise be impracticable for the guarantor to know to whom and under what circumstances the guaranty attached; and to what period it might be protracted. Transactions between the other parties to a great extent might from time to time exist, in which credits might be given and payments might be made, the existence and due appropriation of which might materially affect his own rights and security. If, therefore, the questions were entirely new, we should not be disposed to hold a different doctrine; and we think the English decisions are in entire conformity to our own."

In *Reynolds* v. *Douglass* (12 Pet. 497, 504), decided at the same term and referred to in the foregoing extract, Mr. Justice McLean stated the rule to be " that, to entitle the plaintiffs to recover on said letter of credit, they must prove that notice had been given in a reasonable time after said letter of credit had been accepted by them to the defendants, that the same. had been accepted; " and he added: " This notice need not be proved to have been given in writing or in any particular form, but may be inferred by the jury from facts and circumstances which shall warrant such inference."

There seems to be some confusion as to the reason and foundation of the rule, and consequently some uncertainty as to the circumstances in which it is applicable. In some instances it has been treated as a rule, inhering in the very nature and definition of every contract, which requires the assent of a party to whom a proposal is made to be signified to the party making it, in order to constitute a binding promise; in others it has been considered as a rule springing from the peculiar nature of the contract of guaranty, which requires, after the formation of the obligation of the guarantor, and as one of its incidents, that notice should be given of the intention of the guarantee to act under it, as a condition of the promise of the guarantor.

The former is the sense in which the rule is to be understood as having been applied in the decisions of this court. This appears very plainly, not only from a particular consideration of the cases themselves, but was formerly declared to be so by

Mr. Justice Nelson, speaking for the court in delivering its opinion in *Louisville Manufacturing Co.* v. *Welch* (10 How. 461, 475), where he uses this language : " He [the guarantor] has already had notice of the acceptance of the guaranty and of the intention of the party to act under it. The rule requiring this notice within a reasonable time after the acceptance is ab-solute and imperative in this court, according to all the cases; *it is deemed essential to an inception of the contract ;* he is, there-fore, advised of his accruing liabilities upon the guaranty, and may very well anticipate or be charged with notice of an amount of indebtedness to the extent of the credit pledged."

And in *Wildes* v. *Savage* (1 Story, 22) Mr. Justice Story, who had delivered the opinion in *Douglass* v. *Reynolds* (7 Pet. 113), after stating the rule requiring notice by the guarantee of his acceptance, said : " This doctrine, however, is inappli-cable to the circumstances of the present case ; for the agree-ment to accept was contemporaneous with the guaranty, and, indeed, constituted the consideration and basis thereof."

The agreement to accept is a transaction between the guar-antee and guarantor, and completes that mutual assent neces-sary to a valid contract between them. It was, in the case cited, the consideration for the promise of the guarantor. And wherever a sufficient consideration of any description passes directly between them, it operates in the same manner and with like effect. It establishes a privity between them and creates an obligation. The rule in question proceeds upon the ground that the case in which it applies is an offer or a pro-posal on the part of the guarantor, which does not become effective and binding as an obligation until accepted by the party to whom it is made ; that until then it is inchoate and incomplete, and may be withdrawn by the proposer. Fre-quently the only consideration contemplated is that the guar-antee shall extend the credit and make the advances to the third person, for whose performance of his obligation, on that account, the guarantor undertakes. But a guaranty may as well be for an existing debt, or it may be supported by some consideration distinct from the advance to the principal debtor, passing directly from the guarantee to the guarantor. In the case of the guaranty of an existing debt, such a consideration

is necessary to support the undertaking as a binding obligation. In both these cases, no notice of assent, other than the performance of the consideration, is necessary to perfect the agreement; for, as Professor Langdell has pointed out in his Summary of the Law of Contracts (Langdell's Cases on Contracts, 987), "though the acceptance of an offer and the performance of the consideration are different things, and though the former does not imply the latter, yet the latter does necessarily imply the former; and as the want of either is fatal to the promise, the question whether an offer has been accepted can never in strictness become material in those cases in which a consideration is necessary; and for all practical purposes it may be said that the offer is accepted in such cases by giving or performing the consideration."

If the guaranty is made at the request of the guarantee, it then becomes the answer of the guarantor to a proposal made to him, and its delivery to or for the use of the guarantee completes the communication between them and constitutes a contract. The same result follows, as declared in *Wildes* v. *Savage* (*supra*), where the agreement to accept is contemporaneous with the guaranty, and constitutes its consideration and basis. It must be so wherever there is a valuable consideration, other than the expected advances to be made to the principal debtor, which, at the time the undertaking is given, passes from the guarantee to the guarantor, and equally so where the instrument is in the form of a bilateral contract, in which the guarantee binds himself to make the contemplated advances, or which otherwise creates, by its recitals, a privity between the guarantee and the guarantor; for in each of these cases the mutual assent of the parties to the obligation is either expressed or necessarily implied.

The view we have taken of the rule under consideration, as requiring notice of acceptance and of the intention to act under the guaranty, only when the legal effect of the instrument is that of an offer or proposal, and for the purpose of completing its obligation as a contract, is the one urged upon us by the learned counsel for the plaintiff in error, who says, in his printed brief: "For the ground of the doctrine is not that the operation of the writing is conditional upon notice,

but it is that until it is accepted, and notice of its accept-
ance given to the guarantor, there is no contract between the
guarantor and the guarantee; the reason being that the writ-
ing is merely an offer to guarantee the debt of another, and it
must be accepted and notice thereof given to the party offer-
ing himself as security before the minds meet and he becomes
bound. Until the notice is given, there is a want of mutu-
ality: the case is not that of an obligation on condition, but
of an offer to become bound not accepted; that is, there is not
a conditional contract, but no contract whatever."

It is thence argued that the words in the instrument which
is the foundation of the present action — " we hereby guar-
antee unto them, the said Wells, Fargo, & Co., *unconditionally,
at all times*," &c. — cannot have the effect of waiving the
notice of acceptance, because they can have no effect at all
except as the words of a contract, and there can be no con-
tract without notice of acceptance. And on the supposition
that the terms of the instrument constitute a mere offer to
guarantee the debt of Gordon & Co., we accept the conclusion
as entirely just.

But we are unable to agree to that supposition. We think
that the instrument sued on is not a mere unaccepted proposal.
It carries upon its face conclusive evidence that it had been
accepted by Wells, Fargo, & Co., and that it was understood
and intended to be, on delivery to them, as it took place, a
complete and perfect obligation of guaranty. That evidence
we find in the words, " for and in consideration of one dol-
lar to us paid by Wells, Fargo, & Co., the receipt of which is
hereby acknowledged, we hereby guarantee," &c. How can
that recital be true, unless the covenant of guaranty had been
made with the assent of Wells, Fargo, & Co., communicated
to the guarantors? Wells, Fargo, & Co. had not only assented
to it, but had paid value for it, and that into the very hands
of the guarantors, as they by the instrument itself acknowl-
edge.

It is not material that the expressed consideration is nomi-
nal. That point was made, as to a guarantee, substantially
the same as this, in the case of *Lawrence* v. *McCalmont* (2 How.
426, 452), and was overruled. Mr. Justice Story said: " The

guarantor acknowledged the receipt of the one dollar, and is now estopped to deny it. If she has not received it, she would now be entitled to recover it. A valuable consideration, however small or nominal, if given or stipulated for in good faith, is, in the absence of fraud, sufficient to support an action on any parol contract; and this is equally true as to contracts of guaranty as to other contracts. A stipulation in consideration of one dollar is just as effectual and valuable a consideration as a larger sum stipulated for or paid. The very point arose in *Dutchman* v. *Tooth* (5 Bingham's New Cases, 577), where the guarantor gave a guaranty for the payment of the proceeds of the goods the guarantee had consigned to his brother, and also all future shipments the guarantee might make in consideration of two shillings and sixpence paid him, the guarantor. And the court held the guaranty good, and the consideration sufficient."

It is worthy of note that in the case from which this extract is taken the guaranty was substantially the same as that in the present case, and that no question was made as to a notice of acceptance. It seems to have been treated as a complete contract by force of its terms.

It does not affect the conclusion, based on these views, that the present guaranty was for future advances as well as an existing debt. It cannot, therefore, be treated as if it were an engagement, in which the only consideration was the future credit solicited and expected. The recital of the consideration paid by the guarantee to the guarantor shows a completed contract, based upon the mutual assent of the parties; and if it is a contract at all, it is one for all the purposes expressed in it. It is an entirety, and cannot be separated into distinct parts. The covenant is single, and cannot be subjected in its interpretation to the operation of two diverse rules.

Of course the instrument takes effect only upon delivery. But in this case no question was or could be made upon that. It was admitted that it was delivered to Gordon for delivery to the plaintiffs below, and that he delivered it to them.

But if we should consider that, notwithstanding the completeness of the contract as such, the guaranty of future advances was subject to a condition implied by law that notice

should be given to the guarantor that the guarantee either would or had acted upon the faith of it, we are led to inquire, what effect is to be given to the use of the words which declare that the guarantors thereby "guarantee unto them, the said Wells, Fargo, & Co., *unconditionally, at all times*, any indebtedness of Gordon & Co., &c., to the extent and not exceeding the sum of ten thousand dollars, for any overdrafts now made, or that hereafter may be made, at the bank of said Wells, Fargo, & Co."

Upon the supposition now made, the notice alleged to be necessary arises from the nature of such a guaranty. It is not and cannot be claimed that such a condition is so essential to the obligation that it cannot be waived. We do not see, therefore, what less effect can be ascribed to the words quoted than that all conditions that otherwise would qualify the obligation are by agreement expunged from it and made void. The obligation becomes thereby absolute and unqualified; free from all conditions whatever. This is the natural, obvious, and ordinary meaning of the terms employed, and we cannot doubt that they express the real meaning of the parties. It was their manifest intention to make it unambiguous that Wells, Fargo, & Co., for any indebtedness that might arise to them in consequence of overdrafts by Gordon & Co., might securely look to the guarantors without the performance on their part of any conditions precedent thereto whatever.

It has always been held in this court that, notwithstanding the contract of guaranty is the obligation of a surety, it is to be construed as a mercantile instrument in furtherance of its spirit and liberally, to promote the use and convenience of commercial intercourse.

This view applies with equal force to the exceptions to the other charges and refusals to charge of the court below. These exceptions are based on the propositions, —

1. That if Wells, Fargo, & Co. neglected to notify the defendants below of the amount of the overdraft within a reasonable time after-closing the account of Gordon & Co.; and,

2. That if they failed within a reasonable time after demand of payment made upon Gordon & Co., to notify the defendants

of the default, the plaintiffs could not recover upon the guaranty.

For if the necessity in either or both of these contingencies existed to give the notice specified, it was because the duty to do so was, by construction of law, made conditions of the contract.

But by its terms, as we have shown, the contract was made absolute, and all conditions were waived.

It is undoubtedly true, that if the guarantee fails to give reasonable notice to the guarantor of the default of the principal debtor, and loss or damage thereby ensues to the guarantor, to that extent the latter is discharged; but both the laches of the plaintiff and the loss of the defendant must concur to constitute a defence.

If any intermediate notice, at the expiration of the credit, of the extent of the liability incurred is requisite, the same rule applies. Such was the express decision in *Louisville Manufacturing Co.* v. *Welch, supra.* An unreasonable delay in giving notice, or a failure to give it altogether, is not of itself a bar.

There was a question made at the trial as to the meaning of the word " overdrafts," as used in the guaranty. It was contended that it would not include the debit balance of account charged to Gordon & Murray, and assumed by Gordon & Co., as their successors, before the guaranty was made, nor charges of interest accrued upon the balances of Gordon & Co.'s account, which were entered to the debit of the account. The reason alleged was, that no formal checks were given for these amounts. The point was not urged in argument at the bar, and was very properly abandoned. The charges were legitimate and correct, and the balance of the account to the debit of Gordon & Co. was the overdraft for which they were liable. There could be no doubt that it was embraced in the guaranty.

We find no error in the record.

*Judgment affirmed.*