HOFFMANN et al. v. MAYAUD et al.

(Circuit Court of Appeals, Seventh Circuit. March 28, 1899.)

No. 539.

1. APPEAL—RECORD—REVIEW—EXCLUSION OF EVIDENCE.
    The rule, in force when this case was tried, that the substance of excluded answers must appear in the record, did not apply where the witness testified in person; and the exclusion of an answer will be deemed error or not, according as the question upon its face, if proper in form, may or may not clearly admit of an answer favorable to the party in whose favor it is propounded.

2. GUARANTY—EVIDENCE—CONCLUSIONS.
    In an action on a guaranty the guarantors cannot state their individual understanding whether an acceptance of the guaranty was conditional, and whether an extension of credit had been given in pursuance thereof.

**3. SAME—BEST EVIDENCE.**

A guaranty read, "In consideration of your extending credit to" a company which already owed the guarantee, and which had given further orders for goods, "we hereby personally guaranty the payment of all bills contracted by" the company. *Held*, in an action thereon, that the guarantors could not state what was the consideration of the guaranty, and what moved them to sign it.

**4. SAME—PAROL EVIDENCE.**

They might, however, state the conversations they held with the person who procured the guaranty, in reference to giving it, so far as what was said was relevant, and consistent with the writing. This was especially so where such person had written the guarantee that he had secured a guaranty of "the sum due and to become due," and his letter had been admitted against the guarantors.

**5. SAME.**

To show what was a reasonable extension of credit as to the past-due debt, it was not inconsistent with the writing to prove that at the time it was executed it was agreed that the debtor company was to pay about 1 per cent. of the debt per month, and as much more as it could, and that it was not to be pressed for more during the current year.

**6. CONSTRUCTION OF CONTRACT.**

The guaranty contemplated an extension of credit as to the past-due debt at most for a reasonable time, and such extension was not unreasonable, especially where the creditor justly disfavored the company as a debtor, and the proffered guaranty was unquestionably ample.

**7. SAME—AGENCY.**

The fact that such extension differed from the agreement mentioned in the letter of the person who procured the guaranty was immaterial, as against the guarantors, since such person was the agent of the guarantee, who was bound by the agent's knowledge.

**8. SAME—ACCEPTANCE—PERFORMANCE.**

In consideration of a desired extension of credit to a company which already owed the guarantees, and which had given further orders for goods, a guaranty was proffered, in February, by managers of the company individually, to secure payment of the bills contracted by the company. Before this, the company had agreed to pay a certain sum monthly, and as much more as possible. In March the guarantees wrote the company, without mentioning the guaranty, and insisting on a large remittance in addition to the monthly sum, and stating that they could neither increase nor maintain the account. In reply the company urged the guarantees to fill the pending orders, calling attention to the guaranty, and promising to reduce the indebtedness. In April the guarantees wrote, again without mentioning the guaranty, and stating that they would forward such of the goods as were ready, in consideration of the promise to reduce the indebtedness. In August the guarantees again wrote, complaining that nothing besides the monthly drafts had been paid, and urging a large remittance in September, and the balance in December, and stating that the unfilled orders would not be sent before the receipt of a large remittance. In reply the company asked further indulgence, and directed that the orders be canceled if the goods were not to be shipped "at present." The guarantees answered in September, stating that it was impossible to increase or maintain the account. At this time the debt was less than when the guaranty was proffered. *Held*, that the guarantees did not accept the guaranty as a matter of law, and so perform the consideration therefor, by extending credit, as to be entitled to sue thereon.

**9. SAME—MODIFICATION OF CONTRACT.**

By the correspondence no modified arrangement was made by which the creditors were to ship the goods in August only on condition that such shipment would not increase the account, and on condition that in the meantime a substantial payment should be made.

**10. SAME—CONSIDERATION.**

Forbearance without an agreement on the part of the creditor to forbear is not a sufficient consideration for a guaranty of the debt.

In Error to the Circuit Court of the United States for the Eastern District of Wisconsin.

This action was brought by the defendants in error, Louis Mayaud and Theofile Hunte, citizens of France, and co-partners in business at Paris under the firm name of Mayaud Freres, against the plaintiffs in error, Joseph C. Hoffmann and Bernard Hoffmann, citizens and residents of Wisconsin. The action is upon a contract of guaranty. It is alleged in the declaration: That between July 1, 1893, and December 31, 1895, the plaintiffs sold and delivered to the Hoffmann Bros. Company "religious goods and articles" to the amount and value of 135,549.65 francs, of which there remained due on the last named date 95,492.40 francs. That subsequently the plaintiffs refused to extend the time of payment, or to give further credit, unless guarantied payment for goods sold and to be sold; and thereafter, on February 24, 1896, "to induce the plaintiffs to extend credit upon future sales to said Hoffmann Bros. Company, and to extend the credit upon the goods theretofore sold and delivered to said Hoffmann Bros. Company, the said defendants, Joseph C. Hoffmann and Bernard Hoffmann, who were the managers and principal stockholders of said company, did personally guaranty, in writing, the payment of all bills contracted by said Hoffmann Bros. Company for goods theretofore and thereafter sold and delivered by these plaintiffs to said Hoffmann Bros. Company, which contract of guaranty was in the words and figures as follows, to wit:

" 'Milwaukee, Wisconsin, Feb. 24, 1896.

" 'Messrs. Mayaud Freres, Paris, France—Gentlemen: In consideration of your extending credit to Hoffmann Bros. Company, we hereby personally guaranty the payment of all bills contracted by Hoffmann Bros. Company.

" '[Signed] Joseph C. Hoffmann.
" 'Bernard Hoffmann. ' "

It is further alleged that, relying upon the guaranty, the plaintiffs "extended credit or time of payment of all bills for goods theretofore sold and delivered to said Hoffmann Bros. Company, and extended the credit or time of bills for goods thereafter sold and delivered by them to said Hoffmann Bros. Company"; that between February 24, 1896, and September 23, 1896, the Hoffmann Bros. Company made payments to the plaintiffs on account, and the plaintiffs, relying upon the guaranty, made further sales of goods to the company, as set out in an exhibit attached to the declaration, "so that on October 1, 1896, said Hoffmann Bros. Company was indebted to the plaintiffs for goods sold and delivered * * * in the sum of 94,425.40 francs," for which sum, with interest, judgment is demanded. The answer of Joseph C. Hoffmann contains a general denial of the averments of the declaration, and that of Bernard Hoffmann is, in substance, the same. Each party, at the close of the trial, moved for a peremptory instruction. The court sustained the motion of the plaintiffs, and accordingly a verdict was returned and judgment entered for the plaintiffs in the sum of $18,119.21 with costs. Error is assigned upon this instruction of the court, and also upon the exclusion of evidence. The contention of the appellants is that the defendants in error did not accept, nor give notice of their acceptance of, the guaranty, and did not perform the consideration thereof by giving new credit to Hoffmann Bros. Company, or by extending the time for the payment of the accrued indebtedness of that company. The evidence, which it is important to consider, consists mainly of correspondence subsequent to the execution of the guaranty, and presents no conflict. The inferences to be drawn from it are disputed.

A letter from Hoffmann Bros. Company to the plaintiffs, dated January 10, 1896, contained the following postscript: "We think you better make a draft on us each month anyway for frs. 1,000. Make the drafts payable at ten days' sight, and send them on regularly, and we will pay them as they come; and, besides, we will send you remittances as best we can." By a letter of January

31, 1896, Hoffmann Bros. Company canceled all prior orders, and sent a new order for goods to the approximate value of 2,328.10 francs. The contract of guaranty was delivered on the day of its date to Alfred Beck, a traveling salesman of the plaintiffs, whose habit it was to make annual visits to customers, and who, in this instance, had arrived at Milwaukee as early as February 20, 1896, and on that day had received from Hoffmann Bros. Company an order for goods to the amount of $2,500. In a letter of February 28, 1896, Beck wrote to his employers as follows: "You will find inclosed herewith the two orders from Milwaukee, nine and ten, and the accounts. I secured a guaranty from the two Hoffmann brothers of the sum due and to become due in the future from the company, Hoffmann Bros. Joseph Hoffmann is worth individually $200,000, and the other $150,000, and there is no danger whatever for our money, but they cannot make any remittance at the present moment, —'voila le maheur,'—they cannot pay at this moment. If affairs shape themselves with this individual so that he can, when he returns he will pay us between now and the month of July. Let us hope that matters will arrange themselves thus. He has paid the first draft of 1,000 francs on the 24th of February." On March 17, 1896, the plaintiffs wrote to "Hoffmann Brothers, Milwaukee," as follows: "We have just received the order you kindly gave to our representative when he called upon you recently. We must let you know, before putting in hand this order, that, although it is our intent to favor you, and give all satisfaction, that our financial state would not allow us neither to increase nor maintain the uncovered balance of your account. Be sure, gentlemen, it is not the fear towards your debt which cause this matter, but the necessity in which we are to make the due entry of our accounts for the needs of our industry, and so avoid that the welfare of our trade does not suffer on account of that. We beg you eagerly to cover us, in order that your shipments be dispatched in time required, and favor us, besides the draft of frs. 1,000 we draw on you monthly, with a remittance on account of frs. 20,000 at least. We hope that you would appreciate the equity with our request, and grant it, what we thank you very much beforehand. Waiting for your answer, we beg to remain." On April 11, 1896, Hoffmann Bros. Company answered as follows: "We beg to acknowledge receipt of your letter of the 17th ult., and we regret very much that you have taken this stand. As we have informed Mr. Beck, we will do our utmost to reduce the old account, and we will not increase it, as you seem to think. If it was not reduced during the past year, it was due to the condition of business in this country, which made it impossible for us to do so. But we have every hope that things will improve soon, and our first endeavor will be to pay you up. We are doing our best to accomplish this, and we are sure that you will be satisfied, as we will send you remittances to reduce the old account besides the monthly drafts you are now making. It is impossible for us to send anything at the present time yet, as most of our customers do not make any remittances until after Easter, and we expect now that we will soon receive enough to send you remittances regularly. We hope, therefore, that you will reconsider your decision not to fill the order given Mr. Beck, as we would only be compelled to order goods from other manufacturers, and we would not like to do this, for the reason that we consider it our duty to place all orders with you. You can readily see this, as we must have goods in order to do business, and without these goods we simply could do nothing at all. If, therefore, you should not fill this order we gave, we would be no better off financially, and would have to get our other manufacturers besides, which would only complicate matters more. We hope, therefore, that you will consider these things, and fill this order for us. We positively promise you that we will not increase the amount of our indebtedness, and will, in addition, reduce the old account all we can. In order to satisfy you, and to show that we intend to do all we can, we gave Mr. Beck a guaranty to absolutely protect you, and to induce you to furnish us such goods as we might need. You will also see that we have ordered only such goods as we actually needed, and only in small quantities. Please let us hear from you, therefore, by return of mail, so that we may be sure of getting these goods for fall. In the meantime we beg to accept our thanks for the favors and the consideration shown us in the past, and we hope that you will extend the same to us for the future also. Awaiting an early reply." On April 28,.

1896, the plaintiffs responded as follows: "Your favor dated 11th inst. came duly to hand. With regard to the express promise you make to send us next remittances besides the monthly drafts, we forward you the goods ready on your order of January 13th, and we put in hand the one you gave to our representative, Mr. Beck. We hope to send it towards the beginning of August. * * * Hoping to hear from you shortly, we remain." Again, on August 7, 1896, they wrote: "The month of July is over, and you did not send remittances in spite of the promises you positively stated in the contents in your last letters. We regret very much you take this stand to settle the due bills, because we are just now in a great embarrassment, and get to our credit on the spot, being compelled to borrow to our bankers when we have ever been obliged to do so. We have lately inform them that we shall reimburse ourselves in August, and therefore we are at a loss on account of your indebtedness. We cannot wait any longer, and beg you earnestly to be able to send us 50,000 frs. within the end of September, and the balance of your account in December prox. Hoping that you will understand these reasons, and waiting to hear from you, we beg to remain. * * * P. S. We hurry on orders given by your favor of the 25th ult., but we will not send any goods before you send us a very large remittance." On August 22, 1896, Hoffmann Bros. Company answered: "Gentlemen: Your letter of the 7th inst. has just been received. We are very sorry that we have been unable to send you any remittance beyond the drafts we have paid up to now, but it was simply impossible for us to do so, as the present financial condition of affairs is such in our country that money is simply not to be had. We have large amounts outstanding, and could easily send you the entire amount of our indebtedness if we could but succeed in getting our money from our customers, but we cannot get it, although we have tried everything, and as a result we have been unable to meet our promises to you. We therefore ask you to kindly have a little patience with us, and we will do our best to pay up just as soon as we can possibly manage to do so. We are sorry to learn from your letter that you do not wish to ship any goods until you have received a large remittance from us. This would result in great loss to us, as we would be unable to fill orders we have taken for some of these articles, and we hope you will reconsider this, and ship the goods ordered, if you have not yet done so. If, however, you decide not to ship these goods at present, we would request you to kindly cancel the order given Mr. Beck entirely, as it would be of no use to us to receive these goods after the fall season is over, for the reason that we would then be obliged to hold the goods over until spring. We hope, however, as we have stated above, that you will ship our order, as we would very much like to have these goods for our fall trade, and especially as the bill of goods is not very large, on account of our having ordered only what we absolutely needed. Kindly let us know by return what decision you have come to, and, if you will ship the goods, please do so at once, as it is even now very late for them to come here. Awaiting your kind early reply." On September 18, 1896, the plaintiffs replied: "Dear Sirs: Your favor dated 22nd of August, came duly to hand. We regret very much to say that we can but to confirm the terms of our letter of the 7th same month. We repeat again, we cannot, and it is quite impossible for us to increase, and even to maintain, the actual outstanding debt, because our resources would not allow us to do this. We hope that you understand the reasons which compel us to write you again, and we are certain that you will do all it is in your power to reduce your account. * * * Hoping to hear from you shortly, we beg to remain." On September 23, 1896, a creditors' bill was brought against Hoffmann Bros. Company in the circuit court of Milwaukee county, and a receiver appointed, and in that proceeding a dividend of $1,248.31 was paid to the plaintiffs, leaving $17,492.96, with interest from May 4, 1897, due them.

During the progress of the trial below the court refused to permit the defendants, each, when testifying in their own behalf, to answer a number of interrogatories, one of which was the following: "Q. What conversation did you have with Mr. Beck in reference to the giving of this guaranty by yourself and your brother? Please state fully all the conversation, and all the circumstances connected therewith." In the specification of error it is stated that the witness was expected to answer that question as follows: "That Mr.

Beck came to the city of Milwaukee in February, 1896, and stated that the plaintiffs were not satisfied with the condition of their account against Hoffmann Bros. Company; that they did not like to deal with corporations, but, if Joseph Hoffmann and Bernard Hoffmann would guaranty the indebtedness to be incurred by Hoffmann Bros. Company, the plaintiffs would fill and ship promptly the order given at the time the guaranty was given by the Hoffmann brothers, and would fill all further orders given by Hoffmann Bros. Company in the usual course of business promptly; that a remittance of 1,000 francs should be made monthly, and that Hoffmann Bros. Company should make such remittances as they might be able to do, but in no event were the plaintiffs to press the Hoffmann Bros. Company for a larger remittance than the 1,000 francs monthly during the year 1896; that, relying on Mr. Beck's agreement that the plaintiffs would do as stated above, the guaranty was executed by the Hoffmann brothers, and delivered to Mr. Beck, with the order for goods, which was accepted by Mr. Beck as a part of the agreement of the guaranty."

The brief for the defendants in error concludes as follows: "On February 24, 1896, when the guaranty was written, Hoffmann Bros. Company had already (1) contracted bills for 95,792.50 francs which were past due; (2) had given an order for goods in January for 2,328.10 francs, which had not yet been accepted; (3) had given an order at the same date as the guaranty for goods to be manufactured and shipped the following August, which had not yet been accepted. The matter was thus in fact submitted to Mr. Beck. It was a mere 'projet' until ratified by Mayaud Freres. When the matter was submitted to Mayaud Freres, they were not satisfied with the arrangement, and on March 17, 1896, write Hoffmann Bros. Company, 'That our financial state would not allow us neither to increase nor maintain the uncovered balance of your account,' and that they will not ship the January order, or start the manufacture of the February order, unless they received a remittance of 20,000 francs. Upon receiving this letter, Joseph C. Hoffmann, one of the guarantors, on April 11, 1896, with the knowledge and consent of his co-surety, Bernard Hoffmann, writes a letter in the name of the company to Mayaud Freres, and suggests a modification on their part of the arrangement, and agree that they will, in the near future, make a substantial remittance, and agree to the proposition of Mayaud Freres that in no event shall the account be increased. What the contract was between the parties is thus shown in these letters. If, on February 24, 1896, it had been the intention of the parties that the words 'extending credit' should mean that Mayaud Freres would unconditionally ship the goods ordered in February, the correspondence shows that this arrangement, by agreement of all the parties, including the two sureties, was modified so that Mayaud Freres agreed to ship the goods in August only on condition that such shipment would not increase the account, and on condition that in the meantime a substantial payment would be made. The correspondence thus shows the consideration of the guaranty to have been the extension of the time of payment of the 95,000 francs past-due bills, the sale on credit of the January order, and a further additional agreement to ship in August the goods ordered in February, if, in the meantime, a substantial remittance were made, and that such shipment would not increase the account. The substantial remittance and the agreement not to increase the account were conditions precedent to be performed before Mayaud Freres were obliged to ship the goods. Upon the failure of Hoffmann Bros. Company to perform these conditions precedent, Mayaud Freres were released from making the shipment."

·. J. F. Trottman, for plaintiffs in error.

George P. Miller, for defendants in error.

Before WOODS, JENKINS, and GROSSCUP, Circuit Judges.

WOODS, Circuit Judge, after making the foregoing statement, delivered the opinion of the court.

The refusal of the court to permit the witnesses to answer the questions propounded, it is urged, on the opinion of this court in U. S.

v. Indian Grave Drainage Dist., 57 U. S. App. 417, 29 C. C. A. 578, and 85 Fed. 928, is not reviewable, because it is not shown by the bill of exceptions that the court below was informed what response the witnesses were expected to make; but, while our view of the better practice was stated in that opinion, the decision turned upon other considerations. Our rule on the subject being then the same as that of the supreme court, we could not reasonably have enforced an interpretation or construction different from that declared by the supreme court in Buckstaff v. Russell & Co., 151 U. S. 626, 14 Sup. Ct. 448. The rule had not been changed when this case was tried. By a revision of our rules adopted February 10, 1899, rule 11 was so amended as to require that, "when the evidence rejected is oral testimony a written statement of the substance of what the witness was expected to testify shall be filed and brought to the attention of the court before the retirement of the jury." We have no doubt that the interrogatories by which the plaintiffs in error were required to state their individual understanding, belief, or conclusion whether an acceptance of the guaranty was conditional, whether an extension of credit had been given in pursuance of the guaranty, what was the consideration of the guaranty, what consideration moved them to sign the guaranty, and the like, were properly overruled; but when they were asked what conversations they had with Beck in reference to the giving of the guaranty they should have been allowed, we think, to answer anything relevant, and not inconsistent with the terms and meaning of the written guaranty. On its face that writing is indefinite and uncertain, and besides the proof of the previous dealings and existing relations of the parties, admitted in order to make out their intention, it was competent for the same purpose, so far as it could be done consistently with the writing, to show their negotiations and contemporaneous declarations. The agent, Beck, went beyond the terms of the instrument when he wrote to his principals that he had secured a guaranty of "the sum due and to become due." He simply stated his conclusion, and, if that letter was competent evidence in behalf of the plaintiffs, as we think it was, because it contained the information on which they were to determine whether they would accept the proffered guaranty and incur the resulting obligation "to extend credit," it was more clearly competent for the defendants to show the actual conversations which were had, and on which, presumably, Beck's conclusion was based. Even when, on the evidence admitted, it was clear that a large commercial debt had been incurred, and that further purchases of goods on credit were contemplated, it was still uncertain, except as stated in Beck's letter, whether the time for payment of the existing indebtedness was to be enlarged, and, if so, for how long a time; and, after determining that the existing debt was to be carried, as well as more goods sold, the most that could be said of the agreement was that the extension should be for a reasonable time. Of what would have been a reasonable time what better evidence could there be than the oral declarations or agreements of the parties at the time of the execution of the imperfect writing? The proof offered that the debtor company was to pay 1,000 francs per month, and as much in addition as it could,

but was not to be pressed for more during the year 1896, would have contradicted no term of the written agreement, and, under the circumstances, could hardly be thought to have been unreasonable, especially in view of the creditor's just disfavor of the corporation as a debtor, and the unquestioned and ample sufficiency of the proffered guaranty. If it be suggested that such proof would have shown a guaranty on terms different from those stated in Beck's letter, the sufficient answer is that the plaintiffs alone should suffer for the failure of their agent to furnish them full information.    By a familiar rule of agency, if they chose to accept the guaranty so procured for them, they were bound by the acts, declarations, or knowledge of their representative in the premises, as if their own, whether known to them or not.

This brings us to the inquiry whether the evidence shows beyond question that the plaintiffs did in fact accept the guaranty, and so perform the consideration therefor, by "extending credit," as to be entitled to maintain this action.    It is not important to enter at large into the distinction between contracts of guaranty which, in order to become mutually binding, must have been accepted, and those which, from the beginning, are unconditional.    Like other contracts, a guaranty requires the concurrent assent of the minds of the parties; and, as the doctrine has been applied by the supreme court of the United States, proof of acceptance by the guarantee, or of notice thereof to the guarantor, is required, because "deemed essential to an inception of the contract."    It is so declared in Davis v. Wells, 104 U. S. 159, where the following language, employed in Manufacturing Co. v. Welch, 10 How. 461, 475, is reaffirmed:    "He [the guarantor] has already had notice of the acceptance of the guaranty and of the intention of the party to act under it.    The rule requiring this notice within a reasonable time after the acceptance is absolute and imperative in this court, according to all the cases.    It is deemed essential to an inception of the contract."    The contract under consideration, it is evident, did not take effect upon delivery to Beck.    It is not shown, nor to be presumed, that he had authority to accept it.    In his hands, to quote the brief for defendant in error, "it was a mere 'projet' until ratified by Mayaud Freres"; and it does not appear that he sent to them the writing, or a copy of it.    They knew simply what he wrote them, and on that information, it is conceded, they were not satisfied with the arrangement, and on March 17, 1896, wrote Hoffmann Bros. Company the letter of that date.    The letter contained no mention of the guaranty, and, if any inference on the point is to be drawn, it is of repudiation rather than of acceptance.    The proper course for the guarantees would have been to write to the guarantors individually, informing them whether the guaranty had been or would be accepted and acted upon.    But the guarantors are shown to have been in charge of the business of the corporation, and to have conducted or known of the correspondence, and if, in the letter addressed to the corporation, it had been stated that the guaranty had been received and accepted, it would, of course, have been equivalent to a like statement to the guarantors directly.    The plaintiffs not only did not accept the guaranty, or approve the arrangement made and reported by Beck; they insisted upon a remittance of

20,000 francs in addition to the 1,000 francs promised in the letter of January 10th to be sent monthly, and declared themselves under a necessity "neither to increase nor maintain the uncovered balance" of the account. To this the corporation responded by its letter of April 11th, regretting the stand taken, declaring its inability to make present remittances, and urging upon the plaintiffs, by promising not to increase the indebtedness, by reference to the guaranty, and on other grounds, to reconsider their decision, and "to fill the order given Mr. Beck." That order was in addition to the order of January 31st, which yet remained unfilled. In their reply, by the letter of April 28th, the plaintiffs omitted again to mention the guaranty, or in any way to signify their acceptance of it, but declared their purpose to forward "the goods ready" on the order of January 13th, and "to put in hand" the order given to Mr. Beck. Their determination to do so was not stated to be in consideration of the guaranty, but "with regard to the express promise" of the debtor to send "next remittances besides the monthly drafts." About one-half only of the goods covered by the January order were forwarded, and whether the order sent by Beck was put in hand does not appear. No goods were sent upon it. In the account filed with the declaration, credit is given for eight monthly payments of 1,000 francs, ending with the month of August, 1896, and, additional credit for goods having been given only to the amount of 1,000 francs, it follows that there had been no increase, but a considerable reduction, of the debt when the letter of August 7, 1896, was written, complaining that remittances (beyond the monthly drafts) had not been forwarded, and urging that 50,000 francs be sent them "within the end of September, and the balance of the account in December prox." Other than this, there is to be found in the entire correspondence no promise, or ground for inferring a promise or intention, to extend credit, or give further time for the payment of the existing indebtedness; and, even if this expression could be considered to be such a promise, it was not pretended to be made with reference to the guaranty, or, indeed, upon any consideration. That a definite extension of the time for the payment of the 50,000 francs mentioned was not intended is shown by the notice given in the postscript that no goods would be sent before receipt of "a very large remittance." To this Hoffmann Bros. Company replied on August 22d, begging further indulgence, and urging that the goods ordered be shipped, but directing that the order be canceled if they decided not to ship "at present." The plaintiffs responded on September 18th that they could only confirm the terms of their letter of August 7th, and repeat that it was quite impossible for them "to increase, and even to maintain, the actual outstanding debt"; but before that letter could have reached Milwaukee the possibility of further negotiations ended with the filing of the creditors' bill. The guarantors had knowledge of this correspondence, conducted it on one side, and, of course, are bound by it; but the assertion in the brief that it shows a modified arrangement between the parties, by which "Mayaud Freres agreed to ship the goods in August only on condition that such shipment would not increase the account, and on condition that in the meantime a

substantial payment should be made," is not justified. On the contrary, persistent disagreement at every step of the correspondence is evident. The most that can be said is that Mayaud Freres offered to make further shipments, but upon conditions never assented to by the Hoffmann Bros. Company. If, however, the alleged new or modified arrangement were conceded to be deducible from these letters, or any of them, it could be of no effect upon this controversy unless made on the faith of the guaranty, and of that there is no direct evidence, and, if any from which an inference of acceptance could be drawn, certainly not enough to warrant a withdrawal of the question from the jury. The complaint shows that the guaranty was given to induce the plaintiffs "to extend credit upon" and to secure to them payment of "bills contracted * * * for goods theretofore and thereafter sold." After the agreement was made, the plaintiffs, as already stated, gave further credit for goods sold to the amount of 1,000 francs only. They received monthly payments to the amount of 7,000 francs. The debt was drawing interest meanwhile at the rate of 5 per cent. There had been, therefore, no actual increase of indebtedness above the amount due at the date of the guaranty. At that date the debtor was already insolvent, as the guarantors probably knew, and unable to continue in business, unless helped out of its difficulties; and for that purpose, being themselves possessed of large wealth, and amply responsible, they consented to give the guaranty. Instead of the credit expected and necessary to keep the company in business, the small additional shipment of goods was made as stated, and for seven months the company had the benefit of not being sued, though frequently pressed for payments, upon the principal debt, for the extension of which the guaranty had been given. Nothing was actually done in avowed reliance upon the guaranty, and it is impossible to say that the entire consideration for its execution was performed. It appears that the court below was of opinion that there was some consideration in the fact that Beck, when in Milwaukee, did not bring suit or institute proceedings of any character to enforce the payment of the debt, and that there was in fact an extension of credit. An agreement on the part of the creditor for general indulgence towards the debtor, without any definite time being specified, with proof of actual forbearance for a reasonable time, has been held to be sufficient consideration for a guaranty of the debt (Brandt, Sur. § 16, and authorities cited); but it is equally well settled, as the authorities there cited show, that forbearance without an agreement on the part of the creditor to forbear will not be deemed a sufficient consideration. "There must be promise for promise." This record contains no evidence upon which it can be said conclusively that there was an agreement by the plaintiffs, in consideration of the guaranty, to extend credit or to forbear bringing suit upon their demand. The judgment below is reversed, with direction to grant a new trial.