JONES v. BRITT et al.

(Circuit Court of Appeals, Sixth Circuit.   April 14, 1909.)

No. 1,887.

1. GUARANTY (§ 16*)—CONSIDERATION—FORBEARANCE.

A creditor's agreement to forbear pressing a debt for a definite time or for a reasonable time, or to grant a renewal or extension, is a detriment to the creditor, and a good consideration for a stranger's contract to pay the debt.

[Ed. Note.—For other cases, see Guaranty, Cent. Dig. § 17; Dec. Dig. § 16.*]

2. GUARANTY (§ 16*)—CONSIDERATION—FORBEARANCE.

A peanut company being indebted to plaintiff for nuts purchased, the price of which was not then due, and believing that it would desire an extension on some portions of the indebtedness, defendants signed an agreement, reciting that they were interested in the company, and to induce plaintiff to grant such extension, and to secure the payment of the debt, defendants promised and agreed that they would pay or cause to be paid all of the notes by which the debt was evidenced, with interest at maturity at such period of extension as might be agreed on, not exceeding 12 months. Held that, though the instrument was in form a proposal to the creditor for an agreement that he would grant extensions as the debtor might desire within the time limited, the signing and delivery thereof completed the mutual assent necessary to the making of a bilateral contract by which the creditor agreed to extend the peanut company's obligations within the time named on consideration that defendants would pay at the end of such extension.

[Ed. Note.—For other cases, see Guaranty, Cent. Dig. § 17; Dec. Dig. § 16.*]

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**3. Guaranty (§ 42*)—Contingent Agreement.**

Prior to the maturity of certain debts of a corporation, defendants, who were interested therein, believing that it would require an extension, signed an agreement reciting that to induce plaintiff to grant such extension, not exceeding 12 months, or any part thereof, and to secure plaintiff in the payment of the sums due, defendants promised that they would pay or cause to be paid each and all the notes evidencing the debt, or any renewal thereof, at maturity, or at such period of extension as might be agreed on, not exceeding 12 months. *Held*, that the guaranty was not conditional on the corporation requesting an extension, and that, plaintiff's offer to extend as agreed having been ignored, plaintiff might treat the contract to pay at maturity as breached and sue on the guaranty.

[Ed. Note.—For other cases, see Guaranty, Dec. Dig. § 42.*]

In Error to the Circuit Court of the United States for the Western District of Kentucky.

This was an action against guarantors under an instrument in writing, in these words:

"Memorandum of agreement, between the Southern Peanut Company and T. C. Britt, W. O. Britt, Geo. C. Thompson and W. F. Bradshaw, Jr., all of Paducah, Ky., parties of the first part, and J. D. Jones, of Bakerville, Tenn., party of the second part, witnesseth:

"That, whereas, the Southern Peanut Company is indebted to the said J. D. Jones in sums as follows:

"$1,000.00, evidenced by note, due July 4, 1907.
"$1,000.00, evidenced by note, due July 19, 1907.
"$669.75, evidenced by note, due June 14, 1907.
"$669.75, evidenced by note, due July 14, 1907.
"$1,407.05, evidenced by note, due June 15, 1907.
"$1,407.05, evidenced by note, due July 15, 1907.
"$1,407.06, evidenced by note, due August 4, 1907.
"$1,339.00, evidenced by note, due June 14, 1907.
"$3,500.00, evidenced by note, due June 3, 1907.
"$4,221.00, evidenced by note, due July 3, 1907.
"$————, evidenced by note, due July 18, 1907.

"Aggregating $21,704.89, evidenced by notes as above set forth; and $1,044.20 due on account, being purchase price of 227 bags of peanuts delivered on April 24, 1907, by the steamer 'Kentucky.'

"And, whereas, the said Southern Peanut Company is unable to pay said sums or any of them at this time and desiring an extension of time on some portion thereof for possibly as much as twelve months.

"Now, the undersigned being interested in the Southern Peanut Company and for the purpose of inducing said Jones to grant such extension of time and for the purpose of securing of said Jones the payment of said sums and all of them and the payment of such sums as an extension of time may be granted upon, the said T. C. Britt and O. W. Britt and George C. Thompson and W. F. Bradshaw, Jr., hereby promise and agree that they will pay or cause to be paid each and all of said above mentioned notes or any renewal thereof, in whole or in part, and will pay or cause to be paid said above mentioned account, and they and each of them hereby jointly and severally promise and agree to hold said Jones harmless against any and all loss, principal and interest at the rate of 8 per cent. from each and every one of said debts above mentioned and guarantee and promise the payment thereof at maturity or at such period of extension as may be agreed upon between the parties, not exceeding twelve months or any part thereof.

"In testimony whereof the parties hereto have hereunto set their hands and signed this agreement in duplicate, this 25th day of May, 1907.

"T. C. Britt.
"George C. Thompson.
"W. F. Bradshaw, Jr.
"W. O. Britt.
"J. D. Jones."

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

By the amended petition it was averred that the guaranty "was delivered to him by the defendants and accepted and agreed to by him on the day of its date, immediately upon its execution, and thereafter acted on and relied on by petitioner." It is also, in substance, averred that neither the debtor company nor any of the guarantors had ever requested any extension, although plaintiff stood ready at all times, within the limit of one year, to grant such extension as might be desired, and so notified the defendants on June 18, 1907, and again on August 12, 1907, in writing; but that defendants neither replied to nor acknowledged this notification, nor in any way indicated a desire for an extension or forbearance. It was then averred that all of the said secured items of indebtedness were long past due and wholly unpaid. To the original and amended petitions the defendants filed a general demurrer, "because same does not in law state any cause of action." This demurrer was sustained, and the petition dismissed.

John A. Pitts, for plaintiff in error.
J. B. Daniel, for defendants in error.

Before LURTON and SEVERENS, Circuit Judges, and TAYLER, District Judge.

LURTON, Circuit Judge (after stating the facts as above). The question arises upon the construction of the contract of guaranty. The promise of one to pay the debt of another must not only be in writing, but it must rest upon a good consideration, which may be one passing directly between the guarantee and the guarantor, or some benefit or advantage to the principal debtor or disadvantage to the creditor. Thus, an agreement to forbear pressing a debt for a definite time, or for a reasonable time, or to grant a renewal or extension, is a detriment to the creditor, and is a good consideration for a contract by a stranger to pay the debt of the debtor. Davis v. Wells, 104 U. S. 159, 26 L. Ed. 686; Oldershaw et al. v. King, 2 Hurl. & Nor. 517, Hoffmann v. Mayaud, 93 Fed. 171, 180, 35 C. C. A. 256. The facts averred show that there has been forbearance by the creditor. The account was due when the instrument in suit was executed and the notes of the debtor began to fall due, June 3, 1907, and at intervals down to August 4, 1907. No suit was brought until three months after the last note had matured, and the proffers of extension had been absolutely ignored and plaintiff's letters unacknowledged. This forbearance, according to the averments of the petition, was due to the acceptance by the creditor of the contract of guaranty, and was performance upon his part. But if such forbearance upon his part was without any agreement by him that he would forbear, it is not in law a good consideration for the promise of the defendants to pay the debts of the debtor. "There must be a promise for a promise." Hoffmann v. Mayaud, cited above.

The promise of the guarantors is plain enough. It is that "they will pay or cause to be paid each and all of said above mentioned notes or any renewal thereof, in whole or in part, and will pay or cause to be paid said above mentioned account, * * *" and that such payment shall be made "at maturity or at such period of extension as may be agreed on between the parties, not exceeding twelve months or any part thereof." But it is said that the instrument sued upon is unilateral or nonmutual, in that it does not show any promise by

the creditor to forbear. That it does not in so many words include an express promise by the creditor to grant the forbearance which it is the declared purpose of the defendants to secure to the extent desired may be conceded. The form of the instrument is more in the character of a proposal to the creditor for an agreement that he will grant such extensions from time to time as the debtor might desire within the limits of the time mentioned. Still, it cannot be regarded as an unaccepted proposal. His agreement to allow such extensions as might be desired and acceptance of the proposal is necessarily implied from his signing as the second party to the contract, from the delivery of one of the signed duplicates to him, and his acceptance of such delivery. Thus, the agreement to accept the proposal and grant the forbearance which might be requested by the debtor was contemporaneous with the guaranty itself, and the creditor was not called upon to do anything until requested to perform his part of the agreement by granting such indulgences as the debtor might ask within the time limit prescribed. Davis v. Wells, 104 U. S. 159, 26 L. Ed. 686. This signing and delivery of the instrument completed the mutual assent necessary to the making of an agreement. By such contemporaneous execution there came into force a bilateral contract, under which the guarantors secured to the debtor an option and legal right to extend its obligations within the limit of time named, upon the consideration that they would pay the debts of the debtor to the creditor, either as they matured, or "at such period of extension as may be agreed upon between the parties." But it is urged that, if there was an assent by both guarantee and guarantors to the instrument sued upon, the promises of the guarantors to stand for the debts of the debtor was not absolute but contingent. That is to say, it should be construed as if the guarantors had said to the guarantee:

"The corporation in which we are interested may not be able to meet its obligations as they mature, and may desire to renew and extend the time of payment. Now, if that shall happen, and you shall, in your discretion, permit extensions not exceeding twelve months, we will answer for the payment of the indebtedness you now hold against it."

Of course, if the liability of the guarantors is made to depend upon the actual granting of extensions as they should be requested by the debtor, the judgment of the court below in sustaining the demurrer was correct. Admittedly, if the creditor had refused to grant extensions, if requested by the debtor, he could not enforce the contract against the other party. In that sense there was a contingency. But that is not the defense. The plaintiff offered to perform. The debtor and his guarantors were requested to indicate such extensions or forbearance as they desired. They stood silent. The debts were neither paid, nor extensions nor indulgencies asked. The creditor, nevertheless, waited until the last debt had been due for months and then sued, not the debtor, but the guarantors, upon their agreement to pay its debts at the date of their original or extended maturity, if extended by request.

We are unable to accept an interpretation of this agreement which makes the liability of the guarantors depend upon future forbearance at request of the debtor. That was not the real intent and meaning

of the parties as gathered from a view of the entire instrument and the surrounding circumstances. Instruments of guaranty and letters of credit have long been most useful forms of commercial obligations. Their usefulness and trustworthiness should not be lessened by narrow rules of construction. Let us look to the whole of the instrument and ascertain the real meaning of the parties.

We must begin with the significant fact that the guarantors were themselves "interested," as the contract states, "pecuniarily interested," as the petition avers, in the debtor corporation. Two, if not more, of these were active officers and managers. Only one of the debts which the parties were preparing to take care of was due, and that was a recent open account. The others were promissory notes not yet mature, which would fall due at different dates between June 3d and August 4th, following the date of the agreement. Next, it is recited that the corporation was then desirous of "an extension of time on some portion thereof for possibly as much as twelve months," and that:

"For the purpose of inducing said Jones to grant such extensions and in order to secure said extension of time, and for the purpose of securing to said Jones the payment of said sums, and all of them, and the payment of such sums as an extension of time may be granted upon, * * * they * * * hereby promise and agree that they will pay or cause to be paid," etc.

It was, apparently, not expected that extensions would be asked upon all of the items of debt. Forbearance upon all might be asked at the option of the debtor. But it is plain that the promise of the guarantors included the unextended as well as the extended paper. The plain purpose, we think, which the parties had in mind was to prepare for the exigency which confronted the corporation of bankable paper falling due in the future which at the time they saw no way to meet. The plainest business principles would induce those interested to provide for such a contingency by securing from the creditor in advance an obligation that he would renew or extend, or forbear as he should be requested, all or any part of his claims. The intent and effect of the instrument was to secure an option to the debtor to have all or any part of its paper extended for a time not exceeding one year. The guaranty of the debts of the debtor was the consideration for this option, and its validity in no way depends upon whether the debtor should avail itself of the option or not.

The consideration which passed to the guarantors may have been pecuniary, if, as averred, they were financially interested in the debtor corporation. But aside from this, the agreement to forbear, or extend or renew, was a detriment to the creditor, and this alone is a good consideration at law. Davis v. Wells, 104 U. S. 159, 26 L. Ed. 686; Oldershaw v. King, 2 Hurl. & Nor. 517; Hoffman v. Mayaud, 93 Fed. 171, 35 C. C. A. 256; Pulliam v. Withers, 8 Dana (Ky.) 98, 33 Am. Dec. 479.

The promise that he would extend as requested within the limit of time mentioned was absolute and upon a good consideration, and was an obligatory promise. If he had pressed the debtor and not indulged on request, as he was obligated to do, the guarantors would have been released, and a right of action would also lie for the breach.

The promise to pay was upon the consideration of an obligatory promise for such extensions as might be requested. If no indulgence was asked, the promise to answer for the debts of the company, being absolute and not contingent upon a request, was still enforceable.

Neither was the action premature. The last of the debts fell due in August, 1907. The action was brought in November, following. The promise was to pay "at maturity or at such period of extension as may be agreed on between the parties, not exceeding twelve months or any part thereof." In June, and again in August, the plaintiff in error addressed the debtor and the guarantors, and proffered extension to any date within 12 months from date of contract. These letters went unanswered, and he had a right to treat the contract to pay at maturity as breached and start his suit.