# IN THE MATTER OF THE APPLICATION OF WONG KUM WO FOR A WRIT OF HABEAS CORPUS.

## November 24, 1915.

1. *Aliens—Immigration.—Unfair hearing—Bias of immigration in-*

*spector:* Claim of bias as shown in an alleged assault by an examining immigration inspector upon a witness for the immigrant, *held* not made out.

2. *Same—Same—Finality of finding of fact by immigration officer:* A finding of fact by immigration officers on a hearing to determine an immigrant's right to land, is final as a rule.

3. *Evidence—Experts—Qualifications:* In order to qualify as an expert witness competent to give an opinion as to the nationality of a certain person, it is not necessary that the witness should be learned in the science of ethnology, but it is sufficient if he have long experience and familiarity with people of the race to which the person in question is contended to belong.

4. *Habeas corpus—Basis of petition: prejudicial omissions in record not remedied before the original tribunal:* It is no ground for relief by writ of habeas corpus, that the record on appeal to the Secretary of Labor from a decision of immigration officers denying an immigrant a landing, is not absolutely complete, at least in cases where the immigrant has a reasonable opportunity to have the defect remedied before the original tribunals, and where the defect is not calculated or intended to work prejudice.

5. *Aliens—Immigration—Fair hearing—Representation by counsel:* The mere fact that an immigrant is without counsel in hearings before immigration officers as to his right to land, does not make such hearings unfair.

*Habeas Corpus:* Hearing on return to writ.

*W. T. Carden* and *C. S. Franklin* (*Thompson, Milverton & Cathcart* with them), for petitioner.

*Jeff McCarn*, U. S. District Attorney, and *J. W. Thompson*, Assistant U. S. Attorney, for respondent.

CLEMONS, J. This writ of habeas corpus is based on a petition alleging an unfair hearing before officers of the immigration station at Honolulu respecting the right of the petitioner Wong Kum Wo, an immigrant from China, to land in the United States.

He claimed this right because of his alleged birth in Hawaii—in the year 1892, of a Chinese father and an Ha-

waiian mother. The unfairness of this hearing is rested on eight grounds:

(1) "Gross bias" of the examining immigration inspector "exhibited by an unprovoked and brutal assault upon a witness presented by the attorneys for your petitioner on his behalf in an examination on the 1st day of September, 1914, to-wit, an assault upon his aged and infirm father, Wong Sai Quin;"

(2) The inclusion "in the records of the case [of] a materially and wantonly false translation of two documents written in the Chinese language, attempting thereby to impute fraud to your petitioner;"

(3) The inclusion "in the records of the case [of] a statement of the examining inspector that one of the two documents aforesaid, was in his opinion not in the handwriting of the applicant, your petitioner;"

(4) The inclusion by the examining inspector "in his finding of facts in the records of the case, [of] a materially false statement as to the finding place of the aforesaid two documents by which false statement a material and unwarranted inference of fraud was drawn against your petitioner;"

(5) The receiving "as expert witnesses as to the nationality of your petitioner [of] divers persons utterly unqualified, incompetent, and unfit to render opinion as expert witnesses as to the nationality of your petitioner;"

(6) The "malicious and wrongful" failure of "the examining inspector, by his stenographer, to take down and transcribe the entire testimony" given by a material witness in petitioner's behalf, and "instead thereof taking down and reporting only the parts thereof which to him, the stenographer, did seem important;"

(7) The denial to the petitioner by the inspector in charge of "the right to be represented by counsel at the various purported hearings had and held to determine the question of your petitioner's right to land at the port of Honolulu;" and the denial to the petitioner of "the right to be present by counsel at the examination of persons called by the inspector in charge as expert witnesses, or to be informed of the calling of such persons or to attack the qualifications of unqualified, incompetent, and unfit per-

sons so called by the inspector in charge as expert witnesses;"

(8) The denial of a landing to your petitioner "as a Chinese alien without any evidence whatsoever that he was a Chinese alien, and contrary to the conclusive proof produced by your petitioner that he is a citizen of the United States and of the Territory of Hawaii."

[1] It was upon ground (1) that the petitioner's counsel mainly relied, and the evidence as at first submitted afforded them some basis for argument that at a hearing in the immigration office the petitioner and his alleged father, when approaching to greet each other, had been pushed apart by one of the inspectors with such abruptness and force as to cause the father to lose his balance. The father was infirm from locomotor ataxia, and in any event it would not have taken more than slight force to upset him; but apart from that fact, I became entirely satisfied from the testimony of the petitioner himself, whom of my own motion I ventured to call as a witness after the case had been heard and argued, and who, rather strangely, had not been called as a witness by either party, that there was no element of viciousness or brutality or even of force in any technical assault that might have been made by the examining inspector or any other person. The petitioner, questioned then not only by the court, but by the district attorney, and by his own counsel, testified clearly and unqualifiedly against any such happenings as were charged in the petition.

It may not be without significance, that no claim was ever made of any bias manifested by an assault, until such claim was here made a basis of the petition for this writ of habeas corpus. The alleged assault might well have been called to the attention of the Secretary of Labor on appeal. See discussion of ground (6), post.

[2a] Grounds (2), (3) and (4) relate to two documents in the Chinese language, found beneath the canvas cover

of the petitioner's trunk, under circumstances and conditions which led the examining inspector to conclude that they had been concealed there, and that (as translated by the official Chinese interpreter of the immigration station) they were in the nature of a quiz, with questions and answers, one in the petitioner's handwriting and the other in the handwriting of some one else,—the first item in each document being, respectively:

"When asked your name answer Wong Kum Wo." This is noted by the inspector in the record as being "in the applicant's handwriting."

"When asked how old you are, answer 23 years, 6th month, 6th day" (Note by inspector in the record: "This latter is evidently to be given as the date of his birth, as that is the way he answered"). This is noted in the record as being in the handwriting of another person.

Counsel for the petitioner claim, however, that the natural translation is, to take a single example, "Q. How old are you? A 23 years June 6th"; that the papers are both in the same handwriting, and that they are merely "the writer's recollection of what had happened previous to his writing of it," as shown in several instances by the words 'again asked,' "—in other words merely memoranda of testimony given.    To dispose of the contentions on this point, it is enough to say: (1) that so long as it appears, as it does appear, that two translations may be possible, one in the ordinary "Q" and "A" form of transcripts of testimony, and the other in the form "when asked, answer," the finding that the meaning was in accordance with the latter form rather than the former, is in the nature of a finding of fact which should not be disturbed, for anything that appears in the record; and (2) that the original papers in the Chinese language were forwarded to the Secretary of Labor on appeal, and the petitioner had the advantage of having them available there for examination, and also had the advantage of the statement of the official interpreter of

the immigration station included in the record an appeal at page A 25) that "so far as the wording of his translation of the papers found in the applicant's trunk is concerned, it could have been written after the same questions were asked him [as well] as before. Instead of translating 'when asked' and 'answer',—as it is,—it could be made to read, 'asked' and 'answered'."

The conclusion from the evidence and circumstances that these papers were concealed, was well within the inspector's province as a finder of facts, as was also the conclusion that they were each in the handwriting of different persons, though as to the latter point, if, as claimed, the examining inspector at some time subsequent to the hearing had expressed to one of petitioner's counsel some doubt if after all the writings were made by different persons, I do not see any ground for setting aside the finding that the applicant was not shown to have been born in Hawaii; for, the applicant, having neglected to place the inspector's change of opinion, if any, before the Secretary of Labor on the appeal, should not be heard to say here and now that the inspector's suggestion of the different handwritings should have been changed in the record, to comply with his final change of opinion.    See discussion of ground (6), post. And it may be noted, that it was shown here that the Secretary of Labor did not consider these two documents at all, but rested his decision on appeal on other sufficient grounds.

[3] As to ground (5), the witnesses heard by the immigration officers on their own motion may fairly be regarded as qualified experts, though not ethnologists; for they had resided many years in Hawaii and had had much experience with the Chinese and with the Hawaiians, and with mixtures of these races. As ethnologists the witnesses produced by petitioner's counsel were more learned, but I doubt very much if they were practically any more competent.    One of the former, Dr. Felix von Luschen, professor

of anthropology in the University of Berlin, himself admitted with reference to a person who had lived for a long time among Chinese, Hawaiians, and Chinese-Hawaiians, but was uneducated (i. e., supposedly, not highly educated): "Education makes no difference. If he is intelligent and careful, his opinion would be worth just as much as that of an anthropologist." (Record, page A 3).

[4] As to ground (6), the most that appears to have been omitted from the record is an explicit showing of the fact that Dr. von Luschen examined for shape et cetera the heads of various persons of the pure and of the mixed races involved, including the petitioner, and also compared their complexions with standard test complexion-tints. This omission, so far as there was any, is a matter which it was counsel's duty to have remedied at the time of taking his appeal. It cannot be presumed that the opportunity unusal in proceedings on appeal would not be afforded for a fair, full and complete record. Counsel who countenance an incomplete record cannot be heard to complain of unfairness in that regard. Counsel, however, are free from any charge of wilful acts or omissions, here or elsewhere in the case, calculated to cause "error in the record"—acts or omissions forbidden by a high standard of legal ethics not always observed in practice.

If there is any merit in the rule, established in this court (see, e. g., *In re Hatsuyo Kobayashi*, post, and local cases cited), that the petitioner in habeas corpus who bases his petition on an unfair hearing before immigration officers must exhaust his remedies by appeal to the Secretary of Labor before moving for that extraordinary writ, then there is merit also in a rule, to be applied generally at least, that the petitioner who complains of any particular act or omission of the immigration officers in a hearing before them, should try to have the cause of complaint remedied at the first opportunity and by the officer or board making the act or omission complained of, at least where the defect is

not calculated or intended to work prejudice.    See *In re Can Pon.*, 168 Fed. 479, 480, syllabus, par. 3.

But the contention may be disposed of by the clear showing in the reported testimony of Dr. von Luschen and in the transcript of proceedings, that his opinion was based upon just such an examination and comparison as the petitioner's counsel contends should be in the record: the fact that such examination and comparison are stated with generality instead of with particularity could not have worked any prejudice here.    The record shows (page A 2) an examination and consideration of the petitioner's color, eyes, nose, back of head, chin, and height.    And finally, all that Professor von Luschen would say was, "A man has been examined by me to-day, who does not look absolutely like a Chinese. I think he might be a halfcaste, Chinese and Hawaiian."

[5] As to the alleged denial of the right of representation by counsel, ground (7), it seems that counsel were given every consideration by the immigration officials, though the latter were somewhat too sensitive to counsel's repeated exceptions and earnest efforts to preserve the rights of their client, and that counsel had every advantage recognized by the weight of authority as the due of their client in such cases.    It has been held by some courts, as, e. g., apparently in *Ex parte Ung King Ieng,* 211 Fed. 119, 121, that the presence of counsel should be permitted at such examinations before immigration officers, with an opportunity for cross-examination then and there, but the view of the Supreme Court and of the majority of lower Federal courts is otherwise.    See *In re Can Pon,* 168 Fed. 483; *United States ex rel. Buccino v. Williams,* 190 Fed. 479, 483; *United States ex rel. Buccino v. Williams,* 190 Fed. Fed. 1001; *United States v. Sing Tuck,* 104 U. S. 161, 169; ·*Low Wah Suey v. Backus,* 225 U. S. 460, 469, 470.

[2b]    Ground (8) is untenable.    Though having found, as I do, that the hearings before the immigration officers

were fair, and being therefore without jurisdiction to review their finding so long as there was some evidence to justify it, I may still say that the evidence is ample to warrant the conclusion of the petitioner's failure to show himself to be a citizen by birth. Inter alia, the difference is very marked between the ears in the photograph of the petitioner taken at arrival and those in the photograph of the son of Wong Sai Quin taken for registration purposes just before his departure from Hawaii fourteen years before; and also the general features suggest no identity; furthermore, there is the noteworthy failure of petitioner's alleged relatives, father, mother, and grandparent, to identify him at the immigration station; though, as it is admitted and as may be an excuse, they had not seen him for fourteen years or since he was eight and one-half years old, and two of them had "poor eyesight" which might explain their failure to recognize so near a blood relative.

Let the writ be dismissed and the petitioner remanded to the custody of the respondent, inspector in charge of the immigration station at Honolulu.