FIDELITY UNION TRUST COMPANY, RESPONDENT, v. OLA E. GALM, APPELLANT.

Submitted October term, 1931—Decided May 16, 1932.

112

For the respondent, *Hood, Lafferty & Campbell.*

For the appellant, *Joseph J. Corn.*

The opinion of the court was delivered by

CASE, J.   This is an appeal by the defendant from a judgment rendered in the Essex Circuit against her and in favor of the plaintiff on a jury verdict of $22,409.45, that sum being $20,000 principal, with interest and costs added.   The action was on a contract of guaranty purporting to have been signed by the defendant on December 19th, 1927, and which reads as follows:

"Newark, N. J., December 19th, 1927.

For and in consideration of the sum of one dollar to me in hand paid by Fidelity Union Trust Company, Citizens Branch of Newark, the receipt whereof is hereby acknowledged, and for other good and valuable considerations, I hereby guarantee to said bank, its successor, successors or assigns, payment at maturity of the bills, notes, checks, or other evidences of debt, not exceeding the sum of twenty thousand dollars, either made or endorsed by Adolph C. Galm, already discounted or which may hereafter be discounted by said bank for the said Adolph C. Galm, together with all legal or other expenses of or for collection; demand of payment and notice of protest waived.

And I hereby declare this guaranty to be a continuing guaranty of the payment of such bills, notes, checks, or other

evidences of debt, up to said sum of twenty thousand dollars either made or endorsed by said Adolph C. Galm until revoked by me in writing and a copy of such revocation delivered to said bank.

In the presence of: OLA E. GALM.

C. W. HOLWEG."

The acknowledgment of Mrs. Galm, taken before Elmer W. Boan, notary public, was appended.

Adolph C. Galm was the husband of the defendant and died January 14th, 1929. The notes sued upon were all made or endorsed by Adolph C. Galm, were dated subsequent to the date of the guaranty and were discounted for Galm by the plaintiff bank. Defendant in her answer denied execution of the guaranty and set out four defenses: (1) that she was a married woman on December 19th, 1927; (2) that the guaranty does not embrace the notes sued upon because none of them were made or endorsed by her husband on or before December 19th, 1927; (3) that there was no consideration for the making of the guaranty, and (4) that the plaintiff did not notify defendant of the acceptance of the guaranty. Plaintiff, before filing its reply, moved to strike out the answer and the four defenses on the ground that they were "sham and frivolous." On this preliminary motion the court allowed the answer and the third and fourth defenses to remain but struck the first and second defenses as frivolous. At the trial the judge overruled the evidence offered to sustain the third and fourth defenses. That left as the sole jury question whether or not the guaranty had been given. The grounds of appeal are that the first and second defenses were erroneously struck out and that the third and fourth defenses, as well as certain questions propounded by the defense, were erroneously overruled at the trial.

The defendant's first point is that the Married Women's act is a good defense, and she endeavors thereunder to justify the first of the defenses appended to the answer by reference to the statute generally known as the Married Women's act, *infra*. The contention is that the defendant, because a mar-

ried woman, could not become a guarantor. Section 5 of the Married Women's act, as in force at the time of the giving of the guaranty, is found in the amendment (*Pamph. L.* 1927, *ch.* 11, *p.* 33), as follows:

"Any married woman shall, after the passing of this act, have the right to bind herself by contract with any person in the same manner and to the same extent as though she were unmarried, which contracts shall be legal and obligatory, and may be enforced at law or in equity, by or against such married woman, in her own name, apart from her husband."

It is not denied that this statute, in terms, gave ample power to a married woman to obligate herself to any person by contract, whether by way of guaranty or otherwise; but it is said that the legislation is void because the subject-matter is not embraced within the title. The title of the main act is "An act to amend the law relating to the property of married women." The last mentioned act was approved March 27th, 1874. *Rev.* 1877, *p.* 636; 3 *Comp. Stat., p.* 3223. The 1927 act is entitled "An act to amend an act entitled 'An act to amend the law relating to the property of married women' (Revision), approved March 27th, 1874." One of the acts in force at the time of the passage of the 1874 statute was an act entitled "An act for the better securing of the property of married women," approved March 15th, 1852. *Pamph. L.* 1852, *ch.* 171, *p.* 407. The reasoning is that the 1927 act gives to married women a broad power to obligate, and therefore to dissipate, their property; that consequently it is not an act to *secure* to them their property rights and so not within the proper scope of an act the title of which indicates the purpose of *"better* securing" their property. This argument appears to be based on the unjustified assumption that the 1874 act was an amendment to, and is under the title of, the act of 1852. The 1874 statute was a revision which gathered within itself the salient features of the existing laws pertinent to the subject-matter. The language of its title—"An act to amend the law relating to the property of married women"—is not to be understood as a reference to, or as appending the 1874 act to, the statute of

1852. The 1874 act stood under its own title as the comprehensive statute on the subject. It was neither an amendment of nor a supplement to any other act. It supplanted not merely the 1852 act, but also a number of other statutes of which the following will serve as instances: "An act to enable married women to warrant the title of real estate conveyed by them," approved March 20th, 1857 (*Pamph. L.* 1857, *p.* 485) ; "An act to authorize conveyances in certain cases by married women, and to limit their liability upon their covenants," approved March 24th, 1864 (*Pamph. L.* 1864, *p.* 442) ; "A further supplement to an act entitled 'An act concerning wills,' approved April 15th, 1846," approved April 12th, 1864. *Pamph. L.* 1864, *p.* 698. The only references, in the printing of the 1874 revision, to the 1852 act, or to other earlier legislation, are the marginal notations showing sources, as directed by the 1871 statute (*Pamph. L.* 1871, *P.* 88) which named, and defined the duties of, the commissioners of revision and consolidation from whose hands the revision came. The compilation of general, permanent, public acts known as the "Revision of 1877," which was the accomplishment of those able jurists, completely omits the 1852 statute and its supplements, with the exception of a supplement which was approved February 26th, 1874 (*Pamph. L.* 1874, *p.* 15; *Rev.* 1877, *p.* 640), only a few weeks before the approval of the revision and which, seemingly for that reason, escaped inclusion therein. (Also see item 120 "Acts Repealed," *Rev.* 1877, *p.* 1386.) That the title of the 1874 statute is, for title purposes, adequate, is monumented by nearly sixty years of operation thereunder and by a wealth of jurisprudence based thereon. That the section under review has immediately to do with the property of married women is manifest. With the further observation that the language of the 1927 amendment, with divers provisos and saving clauses formerly appended but now omitted, has been, almost *verbatim et literatim,* in the revision since the latter's passage in 1874, we express our conclusion that that amendment was fully within the title of the act, that the defendant was under no disability because she was a married woman,

that the first defense was frivolous and that that defense was properly struck.

Defendant argues further that the authority given by the statute to "contract with any person" does not extend to the obligations sued upon inasmuch as the contract of guaranty was made with a corporation and a corporation, so it is said, is not a person. Blackstone is to the contrary of the last stated propositions. "Persons also are divided by the law into either natural persons or artificial. Natural persons are such as the God of nature formed us; artificial are such as are created and devised by human laws for the purposes of society and government, which are called corporations or bodies politic." 1 *Bl. Com.* 123. See, also, "An act relative to statutes," 4 *Comp. Stat., p.* 4972, § 9, and *Martin* v. *Atlas Estate Co.,* 72 *N. J. Eq.* 416 (at *p.* 419). The whole trend in legal acceptance is that a corporation is a person within the meaning of statutory provisions if the purpose and intent reasonably so indicate and there is no express or implied exclusion. No distinction is shown us whereby the statute was, at its inception, or should now be, in its application, directed toward natural to the exclusion of artificial persons; and we know of none.

The second point is that the guaranty does not embrace the notes in question and it is argued thereunder that because the notes sued upon are dated subsequent to the guaranty the guaranty does not cover them; and this, because the guaranty is said to relate only to notes theretofore made or endorsed. The instrument carries its own answer: "I hereby declare this * * * to be a continuing guaranty * * * until revoked by me in writing and a copy of such revocation delivered to said bank." A continuing guaranty is one which is not limited to a particular transaction or specific transaction but which is intended to cover future transactions. See 12 *R. C. L.* 1061; 28 *C. J.* 897, and cases there cited. To limit the application to evidences of debt executed prior to the date of the guaranty would be to disregard the last sentence of that instrument.

Thirdly, it is said that the court's refusal on motion before

trial to strike the third and fourth defenses created such a situation as that later, at the trial, under the rule of *stare decisis* the court was thereby bound; and that the undertaking of the trial court to rule on those defenses was error. What actually happened at the trial was this: The defendant while on the stand was asked by her attorney, with reference to the fourth defense, whether she had received a notice from the plaintiff. That question was objected to and overruled. Then came this interchange between attorney and court:

"Mr. Corn—May I have a ruling on my defense, your honor? The court—I have sustained the objection to your question. An exception to that ruling may be noted. Mr. Corn—I just desire a ruling on my defense. The Court—The effect of that is a ruling on your defense, but I am not called upon now to rule upon that other than to sustain the objection to this question."

That ruling was on an asked question and only indirectly on the defense. The remedy, if any, was on the evidence ruling.

Later, when defendant's case was otherwise in, defendant offered to prove "that she got no consideration for this guaranty," that is, that no benefit moved to her personally. It was not an answer to the suit that defendant had received no benefit. It was adequate consideration that plaintiff, induced by the guaranty, gave extended credit to another and thus took a position detrimental to itself. *Scherman* v. *Stern,* 93 *N. J. Eq.* 626; *Wallace Muller & Co.* v. *Leber,* 65 *N. J. L.* 195; *Burgesser* v. *Wendell,* 73 *Id.* 286. The attorney invited a ruling by the court as to whether such a defense, thus proved, was sufficient. The trial court properly held that it was not. On the proposal that the court improperly undertook to make a ruling it should first be said that counsel may not press the court to rule on a legal proposition and then, because the ruling is adverse, take the position on appeal that the court was without power to pass on the question. Furthermore, we do not consider that a refusal, on motion with supporting *ex parte* affidavits, to strike separate defenses in advance of trial so fully invokes the rule of *stare decisis* as

that at the trial, in the light of the evidence and with clearer definition of the issues, the court may not make such rulings as the situation then developed justifies, even though these rulings appear to be a departure from the earlier refusal. Otherwise a defendant, having succeeded in shielding his defenses from a preliminary motion to strike, could insist upon taking them through to the jury regardless of the proofs or the admissions at the trial.

The fourth point is that the absence of consideration is a good defense. The pertinence of this point, in view of the evidence, is not apparent. The real consideration was the proposed extension of credit by the bank—credit which it did, in fact, extend. We found, *supra*, that that consideration was adequate. The expressed consideration is the nominal sum of one dollar and "other good and valuable considerations." The guarantor acknowledged, in the instrument, the receipt of the sum of one dollar and she is now, under the circumstances of the case, estopped to deny it. If she has not received it she would now be entitled to recover it. *Davis* v. *Wells, Fargo & Co.,* 104 *U. S.* 159; 26 *L. Ed.* 686.

Point five does not appear to have been the subject of judicial action or of exception; nor is it amongst the grounds of appeal. In so far as it relates to the alleged overuling of the fourth defense we have already expressed our finding.

The sixth point is that the court overruled the following question asked of Elmer W. Boan: "Did you ever notify Mrs. Galm after this [the guaranty] was signed that you were extending credit to her husband?" Boan was note-teller of the bank. He was also a notary public and as such was called by Mr. Holweg, the cashier, to attend at the execution of the instrument and take Mrs. Galm's acknowledgment. Further than this, and the added fact that the paper was physically filed with other guarantees and collaterals in the note-teller's cage, he had nothing to do with it. He also testified that the notes sued upon were signed and endorsed as the respective writing upon them indicated and that they were discounted and remained unpaid; facts which the defense readily admitted. There was nothing in his direct examina-

tion to warrant the overruled question on the cross, nor was there anything upon which his act or omission in the respect inquired of might be charged against the plaintiff. Point seven goes likewise to the overruling of a further question asked of the same witness on cross-examination. This ruling also, for the reason that the question was not fair cross-examination, was proper.

A question asked of Holweg, in cross-examination, and over-ruled is considered in the eighth point. The question was indefinite in time and immaterial in subject-matter. There was no harmful error.

The judgment below will be affirmed.

*For affirmance*—TRENCHARD, PARKER, CAMPBELL, LLOYD, CASE, BODINE, DONGES, VAN BUSKIRK, KAYS, HETFIELD, DEAR, WELLS, KERNEY, JJ. 13.

*For reversal*—None.