No. 13,639.

PEOPLES' BANK OF NEW ORLEANS VS. J. L. LEMARIE ET ALS.

106 429
122 676

106 429
123 981

## SYLLABUS.

1. *Acceptance of guaranty.* Notice of acceptance of guaranty may be waived by the form of the guaranty, or it may be implied from the terms of the instru ment. The waiver of acceptance finds support in the facts and circumstances of the case.
2. *Conditions to secure guaranty complied with by plaintiff.* Willingness to accept the guaranty and the acceptance itself was made evident on the part of the plaintiff by complying with defendants' proposal in postponing payments of overdrafts at the time due and paying others covered by the instrument of guaranty.
3. *Interest.* The overdrafts covered by the instrument, and not the amount of the guaranty bore interest.

APPEAL from the Civil District Court, Parish of Orleans.—
King, J.

*E. Howard McCaleb,* for Plaintiff, Appellee.

*Chaffe & Bowers,* for Lemarie, Defendant, Appellant.

*Saunders & Gurley,* for C. E. Levy and S. D. Jackson, Defendants,
Appellants.

*Rouse & Grant,* for Godchaux, Koen and Martinez, Defendants,
Appellants.

The opinion of the court was delivered by

BREAUX, J.    The following is a copy of the written instrument upon
which this suit was brought:

"New Orleans, January 20th, 1896.

"We, the undersigned stockholders of the New Orleans Abattoir
Co., Ltd., do hereby bind and obligate ourselves jointly unto the
Peoples' Bank of New Orleans in the sum of twenty thousand dollars
($20,000) to cover any over-drafts which have been or may be made by
the New Orleans Abattoir Co., Ltd., up to said amount with eight per
cent. interest *per annum,* and do bind and obligate ourselves jointly to
pay said sum on demand."

This written instrument is signed by all the defendants except
Charles E. Levy, who added the following lines to the writing:    "I
hereby guarantee as my part, two thousand dollars," and then signed
the *addendum.*

The material averments of the Peoples' Bank are that the principal
of the defendants, the New Orleans Abattoir Co., Ltd., is its debtor in
an amount exceeding twenty thousand dollars, and that this company
is absolutely insolvent, and that the defendants sued are each liable in
the sum of two thousand dollars, with interest at eight per cent. *per
annum* from January 20th, 1896, this amount being the extent of the
joint obligaion upon the contract sued upon.    Four of the defendants
appealed.    It follows that the other signers of the obligation present
no issues before us for decision.

In its answer to defendants' appeal, the appellee complains of the
judgment, in so far as the appellants have been condemned to pay only

( as it contends) five per cent. interest after judicial demand. The contention of the appellee regarding interest is that defendants and appellants should have been condemned to pay eight per cent. interest after judicial demand as well as (as they were so condemned) before judicial demand.

With reference to plaintiff's claim, plaintiff's counsel urges upon the court's attention that the instrument in writing constituted an absolute and perfect guaranty on the part of the defendants. With reference to interest, plaintiff's counsel contends that the contract stipulates for eight per cent. from its date.

The defendants and appellants, on the other hand, set out, in substance, that plaintiff failed to sustain a cause of action because no evidence was offered showing that defendants were ever notified of plaintiff's acceptance of that which defendants contend was a mere proposal; that they were entitled to notice within a reasonable time of plaintiff's acceptance of that which they aver was an offer to become guarantors. The defendants in argument contended further that the issues are similar to those decided in Lachman and Jacobi vs. Bloch Bros., 47 Ann. 505.

With reference to the interest claimed by plaintiff, defendants contend that, in case we should find them liable for the principal, the District Court erred in giving judgment from the date of the contract at eight per cent. interest on the principal allowed and five per cent. interest from judicial demand.

The questions of law may not be very simple, those of fact are simple enough.

The facts are, as testified to by the president of the bank, that he received the instrument in writing about the time it was dated, and that at the time this instrument was signed, the overdrafts amounted to seven thousand six hundred and twenty-one dollars. It further appears that the plaintiff bank is a creditor of the Abattoir Company in an amount larger than is covered by the instrument of guaranty. It also appears that no express or special notice was ever given by the bank to those who signed the instrument of guaranty.

We take the rule as settled that the absolute promise in due form to answer for the debt of another is binding. True, care should be taken to mark the difference between a perfect guaranty and the mere offer to become a guarantor. In the former case no formal acceptance is necessary, in the latter the offer or tender of guaranty must be

accepted, and the acceptance notified to the offerer in order that it may become a binding contract.

In the case before us for decision, the promise was direct and the guarantors assumed from the date of the contract to secure an existing debt of the principal in such terms that it is manifest that no notice was in contemplation of the parties. The guarantors in the commercial instrument said: "We do hereby obligate and bind ourselves, etc." In view of the terms of the instrument they signed, they must be held to have waived all notice of acceptance. The expressions contained in an instrument similar were construed in Davis vs. Wells, 104 U. S. 159, and the principle approvingly commented upon in Brandt on Surety, § 194, citing several cases quite in point, and Story, § 1133, 4th Edition. From the last we quote: "The only notice to which the guarantor has a strict right is notice that his proposal of guaranty is accepted and will be acted upon; and this right may be waived by form of the warranty, or by the manifest intention of the parties as implied thereby." Illustrative of this principle, this commentator cites a case in which the guarantee was in these terms: "If you will let A have $100 worth of goods on three months' notice, you may consider me as guaranteeing the same," as one in which no notice of acceptance was necessary. Our Civil Code gives to an act, although not directly an acceptance, the effect of acceptance. Arts. 1802, 1816.

The appellants cite the Lachman and Jacobi case. The signers of the paper addressed to Lachman and Jacobi of San Francisco, setting out "I agree *to become* surety to you for an amount stated for B and B." (Our italics.) In view of the facts and circumstances, this letter was construed by the court as containing a mere proposal which required acceptance, and there was nothing about the issues from which acceptance could be implied. In the case in hand there was a delivery made of the instrument to the creditor carrying with it, in view of the time of delivery, and the words of the contract, a complete and perfect obligation of guaranty. In arguing in the case before us, it was said by plaintiff substantially that the obligation was voluntarily assumed by defendants, who, as stockholders of the Abattoir Company, were not unconcerned parties. The defendants seek to meet this by urging that the shareholders of a company are absolutely distinct from the corporation and that, in consequence, they are not to be held as legally affected with notice of what was done in

the course of the business between the company and the bank. Our view of the issues renders it unnecessary to attach great importance to the notice to which stockholders may or may not be held. In considering the circumstances of this case, however, the attending relations of stockholders may, to some extent, at least, be taken into account. Although stockholders are ordinarily distinct from the corporation in which they own stock, they are not absolute strangers to it, and cannot always be considered as entirely ignorant of the business they assume to protect by their signatures as guarantors, and of all circumstances connected with an indebtedness they undertake to secure.

They know, or they must, we think, be held to have known, that their corporation was indebted to the bank; that their signatures would obtain some forbearance in the collection of .the amount due, and secure an additional amount on drafts to be drawn by the corporation.

Coming now to the defendants' position that the accounts of the bank do not show the consideration upon which the items debtited to the Abattoir Company were based; further that it does not appear whether the charges were for overdrafts within the terms of the guaranty, we think it sufficient to say, in answer, that the evidence shows that plaintiff's (overdrafts) accounts are correct. They were the only overdrafts of the company against this bank, and, manifestly. they were the overdrafts the defendants undertook to guarantee.

To the argument of the learned counsel for defendants that the president may have received this instrument as a proposal, and that, under the circumstances, he may have been unwilling to accept it, at the time, that he may have supposed that the acceptance of the instrument would have bound the bank to advance to the Abattoir Company, to the extent of twenty thousand dollars as a condition of the guaranty, an answer to these contentions presents itself in the fact that the overdrafts due at the time were not pressed for collection and that further advances were made in compliance with the contract. In other words, as to the amount to be advanced, the president received the instrument and paid the overdrafts. It may be said here, we think, that the instrument of guaranty was the inducement for giving the additional credit.

Interest on the amount of the principal allowed in the judgment presents the next question for our decision. There is a decided lack of clearness in the instrument regarding interest. The first part of the writing absolutely states an amount as the sum for which the

signers will be bound, but near the end or bottom of this writing the total of the overdrafts is referred to and an amount mentioned as follows: "To cover any overdrafts which have been or may be made by the New Orleans Abattoir Company up to said amount with eight per cent. *per annum.*" It is not very clear whether the signers intended that the eight per cent. interest should refer to the amount of the bond or to the overdrafts. There is some obscurity in those clauses of the contract which calls for construction of the contract. We are not certain that it was the intention to add interest to the amount of the bond. It is unusual to specify the amount of a guaranty, and at the end of the writing, add interest, as an additional amount to be paid by the guarantors, over and above the sum first stated. The argument is persuasive, to say the least, that sureties desiring to obtain time for the principal will stipulate that the amount of the obligation shall stand for principal and interest of the overdrafts.

We conclude that the parties intended, in using the expression "up to the said amount with eight per cent. *per annum,*" to bind themselves to pay the amount of the overdrafts with eight per cent. interest to the amount of twenty thousand dollars, and not twenty thousand dollars with eight per cent. interest, not expressly stated.

It is therefore ordered, adjudged and decreed, that, as to the defendants, Charles Godchaux, Urban Koen, D. B. Martinez and Charles L. Levy, the judgment appealed from be amended by striking out and deducting therefrom the sum of four thousand eight hundred dollars and interest of five per cent. on said amount.

It is further amended by condemning each, Charles Godchaux, Urban Koen, D. B. Martinez and Charles L. Levy, to pay unto the Peoples' Bank of New Orleans the sum of two thousand dollars each with legal interest from judicial demand and that appellee pay costs of appeal.

In those respects that the judgment appealed from is not in conflict to or inconsistent with our decree, it is affirmed.

(MONROE, J., dissenting, handed down a separate opinion.) Rehearing refused. (MONROE, J., dissenting.)

PROVOSTY, J., takes no part, he not having been a member of the court at the time the case was submitted.