(99 South. 714)

No. 25567.

TEXAS CO. v. HUDSON et al.

(March 24, 1924.)

*(Syllabus by Editorial Staff.)*

1. Guaranty ⬤⚊6—Proposed guaranty of gas rentals held not accepted by gas company.

Where a consumer of fuel gas was by the gas company required to give a guaranty for rentals and prepared and signed a guaranty which was not satisfactory to the company, that the company continued to furnish gas after expressly rejecting the proposed guaranty and while protesting against it and insisting on a different contract did not constitute an acceptance thereof so as to make it a contract.

2. Guaranty ⬤⚊6, 7(1) — Mutual consent of parties necessary to contract of guaranty; notice of acceptance necessary.

A contract of guaranty requires the mutual consent of the parties, and an offer to guarantee the payment of a credit to be extended to a third person is not binding on the party

making the offer until it is accepted by the party to whom the offer is made and until the party making it is notified of its acceptance.

Appeal from First Judicial District Court, Parish of Caddo; J. H. Stephens, Judge.

Action by the Texas Company against W. G. Hudson and others. Judgment for defendants, and plaintiff appeals. Affirmed.

Hampden Story and Chas. H. Blish, both of Shreveport, for appellant.

Dickson & Denny, of Shreveport, for appellees.

By Division A, composed of O'NIELL, C. J., and ROGERS, and BRUNOT, JJ.

O'NIELL, C. J. This suit is founded upon what the plaintiff contends is a contract of guaranty. The defense is that the instrument sued on was only an offer on the part of the defendants, and the other signers, to become guarantors, under the conditions stated in the document, and that, as the offer was not accepted by the Texas Company, to whom it was made, it did not become a contract. The defense was sustained by the district court, and the plaintiff has appealed.

The defendants are A. A. Belding, B. M. Dorrity, and W. G. Hudson. They were stockholders and directors of a Louisiana corporation called the Belding Oil Corporation, Incorporated, domiciled in Shreveport. Belding was president of the company, Dorrity was vice president, and Hudson was secretary and treasurer. The company was engaged in producing oil, or drilling for oil, on what was called the Bailey lease, in the parish of Caddo. The Texas Company furnished the fuel gas used in the drilling operations, from November, 1920, until the end of January, 1921.

On the 16th of December, 1920, T. M. Clifford, agent in charge of the natural gas department for the Texas Company, wrote a letter to the Belding Oil Corporation, saying:

"Gentlemen: Upon checking our accounts for the month of November, my attention has been called to charges rendered the Belding Oil Corporation in our Caddo district, for gas purchased, in the amount of $1,230.85.

"The regulations of this company require a cash deposit or bankers' guarantee of account, from consumers on our lines. It is my understanding that, in talking this matter over with Mr. Schwarm, our district superintendent, you agreed to place with us a banker's guaranty of your account; this, however, has never been done.

"Please be so kind as to call at this office and complete these arrangements, without further delay."

On the 27th of December, 1920, Mr. Clifford, for the Texas Company, wrote again to the Belding Oil Corporation, viz.:

"Gentlemen: We have been advised to-day by our legal department that a ruling of the company has been made which will prevent us in the future accepting bankers' guaranties on gas accounts, making it necessary for us to require a cash deposit on our accounts.

"Please be kind enough to give this matter your immediate attention by calling at this office and completing arrangements for same."

On or about the 5th of January, 1921, Mr. Dorrity called at the office of the Texas Company and handed to Mr. Schwarm, superintendent of the natural gas department, the document which is the basis of this suit. It is dated at Shreveport, January 5, 1921, is addressed to the Texas Company—Natural Gas Department, and is signed by the three defendants and by three other persons; the latter being not referred to in this suit. Here is a copy of the document, viz.:

"Gentlemen: In compliance with your request, and on condition that you continue to supply the Belding Oil Corporation, Inc., with gas for operating their lease known as Bailey No. 2, near Vivian, Caddo parish, La., we, the undersigned, individually and severally, pledge the payment of the bills which may be rendered monthly by you for the gas furnished to the above lease.

"It is understood that this pledge is given in lieu of a cash deposit which you might require, and it is further understood that it is revocable by being withdrawn by either or all parties whose names are affixed hereto, or by yourselves, at any time, by giving notice in writing."

Dorrity testified that, when he handed the document to Mr. Schwarm, the latter said that "he did not think the Texas Company would accept it, but that he would submit it and let us hear from them." Dorrity's statement was not contradicted by Mr. Schwarm, who testified in the case. In fact, it is admitted that Mr. Schwarm or Mr. Clifford submitted the document to the legal department of the Texas Company, and that the department rejected the proposed guaranty, in the form in which it was tendered. The attorneys wrote a form of guaranty which they would accept, and gave duplicate copies of it to Mr. Clifford for submission to the officers of the Belding Oil Corporation. Mr. Clifford took the duplicate copies of the proposed guaranty to the office of the Belding Oil Corporation and submitted the contract to Messrs. Belding and Hudson for signature, saying that the legal department of the Texas Company had rejected the form of guaranty which Mr. Dorrity had left at the company's office. The difference, however, between the new form of guaranty, proposed by the lawyers for the Texas Company, and that which had been submitted by the defendants, was not so much a matter of form as of substance. The new proposition was in the form of a continuing guaranty for the payment of any indebtedness of the Belding Oil Corporation, present or future, whether on open account or note, secured or unsecured, to the amount of $2,000. It was, in form, a solidary obligation, waiving the pleas of discussion and division, and binding each guarantor to pay, on demand, the full amount due at any time by the Belding Oil Corporation, up to the amount of the guaranty, with interest, charges and costs, and with the benefit of subrogation.

Mr. Clifford left the duplicate copies of the proposed guaranty with Messrs. Belding and Hudson, who were not willing to sign it. Mr. Dorrity was not present. Mr. Belding testified that he asked Mr. Clifford why he had not brought back the document which the Texas Company's lawyers had rejected, and that Mr. Clifford replied that he had forgotten to bring back the document, but that it was of no value. Mr. Belding's testimony in that respect was not contradicted by Mr. Clifford, who, also, testified in the case. The proposed guaranty prepared by the lawyers for the Texas Company was never signed by any one.

At the end of January, 1921, the Texas Company discontinued furnishing gas to the Belding Oil Corporation, for nonpayment of the account, then amounting to $2,315.36; and the corporation soon went out of business. On the 17th of February, 1921, the Texas Company sued the Belding Oil Corporation for the $2,315.36 and got judgment by default. The suit was brought on the open account, without reference to any contract, and without reservation or mention of any claim against the present defendants. They were residents of the parish of Caddo, where the suit against the Belding Oil Corporation was brought, and the plaintiff's failure to sue them at the same time, and to ask for a judgment against them in solido, leaves a strong inference that the plaintiff's officers and attorneys did not then believe that these defendants had guaranteed the debt of the Belding Oil Corporation.

[1, 2] Our conclusion is that the instrument sued on, which was only an offer of a contract of guaranty, was not accepted by the plaintiff and therefore did not become a contract. A contract of guaranty, like any other contract, requires the mutual consent of the parties. An offer to guarantee the payment of a credit to be extended to a third party is not binding upon the party making the offer until it is accepted by the party to whom the offer is made and until the party making it is notified of its acceptance. Bank of Illinois v. Sloo & Byrne, 16 La. 539, 35 Am. Dec. 223; Lachman & Jacobi v. Block & Bro., 47 La. Ann. 505, 17 South. 153, 28 L.

R. A. 255; Douglass v. Reynolds, Byrne & Co., 7 Pet. 113, 8 L. Ed. 626; and Davis Sewing Machine Co. v. Richards, 115 U. S. 524, 6 Sup. Ct. 173, 29 L. Ed. 480. To the same effect, see Louisiana & Western Ry. Co. v. Dillard, 51 La. Ann. 1484, 26 South. 451; People's Bank v. Lemarie, 106 La. 429, 31 South. 138; Heitmann & Co. v. K. C. S. Ry. Co., 136 La. 825, 67 South. 895; Hibernia Bank & Trust Co. v. Succession of Cancienne, 140 La. 969, 74 South. 267, L. R. A. 1917D, 402; and Davis v. Wells Fargo & Co., 104 U. S. 159, 26 L. Ed. 686.

The attorneys for appellant contend that the Texas Company's continuing to furnish gas to the Belding Oil Corporation after the latter had tendered the guaranty sued on was an acceptance of the proposed contract of guaranty. The Texas Company's continuing to furnish the gas might have been regarded as a tacit acceptance of the proposed guaranty if the Texas Company had not expressly rejected the proposition. But the continuing to furnish the gas to the Belding Oil Corporation while protesting against the contract of guaranty proposed by the defendants, and while insisting upon another and different contract of guaranty, could not reasonably be construed as a carrying out of the contract proposed by the defendants.

The judgment is affirmed, at appellant's cost.