Peter A. Green is or was a building contractor. John J. Siben is in the roofing business. On March 17, 1937, Green contracted to build a residence for one George J. Vallee. Vallee required of Green a bond of $2,700 which the American Indemnity Company of Galveston, Texas (hereinafter called the insurer) issued after John J. Siben, Peter Judlin, A. Menendez Company, Inc., and Edward Dietrich had become obligated to it as indemnitors under a so-called "contract for bond". The Vallee residence appears to have been erected by Green to the satisfaction of all parties concerned and he continued to make other contracts and the insurer continued to underwrite their faithful performance. On June 24, 1938, Green agreed to erect a house for Wilfred I. Binnings with the same surety giving the usual guarantee to Binnings, the owner, and to all sub-contractors, materialmen, laborers, etc., concerning any claims which might arise out of the default of the contractor in the construction of the building, up to the sum of $5,000. Siben was a sub-contractor on the Binnings job. He constructed the roof of the building for an agreed *Page 707 
consideration. On January 31, 1939, after the building, with its roof, had been accepted by the owner, Siben was paid $111.13, and being unable to obtain any further payment, brought this suit against Green and the insurer for $361.29, the balance due on his roofing contract. It is conceded by all concerned that Siben earned his money and that the balance sued for is correct. Green admits his indebtedness.
The defense of the insurer is based upon the fact that the contract of indemnity, whereby Siben, Peter Judlin and others agreed to hold it harmless from all losses which it might sustain because of its having executed the surety bond for Green in connection with the Vallee job, there is a stipulation which, among other things, provides: "The indemnity and obligations herein assumed by the undersigned shall apply not only to the specific bond hereinabove mentioned, but shall be equally applicable to any other bonds or obligations which may be at any time in the future executed by the company as surety for the above mentioned principal (Green), until or unless the said undersigned shall in writing give the company notice that they will not be bound by this contract of indemnity as to any such other and further bonds as may thereafterwards be executed."
There was judgment below as prayed for against Peter A. Green and the American Indemnity Company of Galveston, Texas, in solido, and the latter alone has appealed.
The question for our determination is the effect of the provision in the Vallee indemnity agreement in so far as subsequent dealings between Green and the insurer is concerned.
It must be conceded that in so far as the wording of the agreement is concerned, Siben and the others clearly undertook to hold the insurer harmless, not only with respect to the Vallee contract, but any other contract which Green might enter into with the defendant as surety, for an indefinite period, or until the indemnitors should notify the insurer that they intended to withdraw. The contention that the indemnitors did not know of the presence of that provision in the contract and that they believed they were only concerned with the Vallee job is, we believe, correct, but it cannot avail Siben and his associates because one is presumed to know the contents of an agreement to which he affixes his signature. No notice of withdrawal was given by Siben or, as far as we know, by any of his associates.
The only question, therefore, is the legal effect of the provision in the Vallee contract concerning future bonds which might be written by defendant.
It is noteworthy that the insurer obtained another indemnitor on the Binnings bond in the person of Fred B. Schindler, who is said by the plaintiff and denied by defendant, to be an agent of the defendant company. It clearly appears from the testimony, however, for whatever it is worth, that while Schindler also acted as the agent of other insurance companies, he sometimes represented the defendant, and it was by the joint check of Peter Green and Fred Schindler, who, as we have said, was the guarantor on the Binnings job, that the partial payment of $111.13 was made to the plaintiff. Neither Siben nor any of his associates who signed the original indemnity agreement in connection with the Vallee job were asked to or actually signed the indemnity agreement in connection with the Binnings job or any other.
To begin with, we regard the agreement signed by Siben and his associates as one of unusual and singularly unilateral obligation. According to the language of the instrument, the indemnitors agreed that they would continue to guarantee the indemnity company on any and all bonds which it might write for Green until notice was given by them to the contrary, but the insurance company did not agree to anything. It was not obligated to issue any bond to Green for any amount or to do anything else in connection with or in consideration of the undertaking by Siben and his associates to underwrite Green in all future transactions with it.
It is suggested that Siben had a sufficient reason for signing this agreement, in that in most of the contracts which Green undertook he was a sub-contractor and, therefore, had a pecuniary interest. It appears, however, from the evidence that while Green and his associates, who were all connected with the building trade obtained sub-contracts on most of the projects undertaken by Green, it was only after the submission of bids and in competition with other parties engaged in similar businesses, but, be that as it may, we think the language found in Lachman 
Jacobi v. Block, 47 La.Ann. 505, 17 So. 153, 155, 28 L.R.A. 255, mutatis mutandis is appropriate *Page 708 
here: "The plaintiffs' case assumes a most extraordinary contract, subsisting and binding defendant, but with no assent on plaintiffs' part, made known to defendant, entitled to know if he was to be held on his guaranty; and another phase of the supposed contract is that while defendant was thus bound, unknown to himself, not the shadow of an obligation rested on plaintiffs to furnish Block any goods whatever. It is difficult to conceive that a contract obligation of defendant came into full force by his proffered guaranty in June, 1891, with not the slightest intimation of assent or acceptance by those to whom it was tendered. Contracts, the Code declares, arise from proposition by one and acceptance by the other of the parties. As the Code again puts it: Consent being an operation of the mind, it can have no effect in producing the contract, unless evinced in some manner that shall cause it to be understood by the other party. In a varied form of expression, the Code again declares the agreement is incomplete until acceptance. Nor can there be any acceptance unless given within the time it was the manifest intention to allow."
In Texas Company v. Hudson et al., 155 La. 966, 99 So. 714, 715, our Supreme Court said: "Our conclusion is that the instrument sued on, which was only an offer of a contract of guaranty, was not accepted by the plaintiff and therefore did not become a contract. A contract of guaranty, like any other contract, requires the mutual consent of the parties. An offer to guarantee the payment of a credit to be extended to a third party is not binding upon the party making the offer until it is accepted by the party to whom the offer is made and until the party making it is notified of its acceptance. Bank of Illinois v. Sloo Byrne, 16 La. 539, 35 Am.Dec. 223; Lachman Jacobi v. Block Bro., 47 La.Ann. 505, 17 So. 153, 28 L.R.A. 255; Douglass v. Reynolds, Byrne Company, 7 Pet. 113, 8 L.Ed. 626; and Davis Sewing Machine Company v. Richards, 115 U.S. 524, 6 S.Ct. 173, 29 L.Ed. 480."
It is our opinion that the best that can be said of the agreement from the standpoint of the defendant is that, as concerned subsequent bonds, it was an offer to become a surety upon each bond which the indemnity company might issue for Green until such time as notice of withdrawal might be given. There was no acceptance of this offer and the only bond (there had been at least four bonds issued to Green according to the evidence) in connection with which the plaintiff Siben and his associates appeared as indemnitors, was the first one — that relating to the Vallee contract.
Counsel for defendant strenuously object to the consideration of this agreement as a contract of suretyship and argue that there is considerable difference between a contract of indemnity and one of suretyship. We are not sure that we see the distinction as clearly as counsel do, but, in any event, as was said in Texas Company v. Hudson, supra, a contract of guaranty or of suretyship, or any other, requires the mutual consent of the parties.
In Corpus Juris, Vol. 28, page 890, we find the following: "In a broad sense a contract of guaranty corresponds with that of suretyship, the distinction between them being merely technical, and a transaction which is called in some cases an absolute guaranty is denominated by other courts a contract of suretyship. A guaranty is like a suretyship in the sense that it is an engagement to answer for the debt, default, or miscarriage of another, and for this reason the terms `surety' and `guarantor' or `guaranty' are often confounded and used interchangeably. The two subjects, however, have some important distinguishing features, which are not easy to define by any brief and comprehensive formula."
The contention of plaintiff based upon Article 3035 of the Revised Civil Code to the effect that in order to support a contract of suretyship there must be a subsisting primary obligation need not be considered since we believe the case turns upon the question of mutuality. The action of the defendant in requiring another indemnitor in connection with bonds issued to Green subsequent to the Vallee contract, is an indication that it rejected the proffer of Siben and the others as contained in the Vallee agreement.
In our opinion the judgment appealed from is correct, consequently, and for the reasons assigned it is affirmed.
Affirmed.
SIMON, J., recused. *Page 709