GUIDRY, Judge.
This is an appeal from a judgment in favor of Travelers Indemnity Company (Travelers) against defendants-appellants Donald Perkins, Mrs. Cecile Seitz Noble, Earl A. Noble, Jr., Wilson J. Tatman and Eunice Packing Company, Inc. in solido in the sum of $45,000.00 plus attorney’s fees in the amount of $4,500.00. The facts giving rise to this suit are as follows:
*1121 On March 3, 1969 Milburn J. Ducote d/b/a Avoyelles Livestock Auction Market and Deridder Livestock Market, Mansura, Louisiana applied to Travelers for a performance bond in the sum of $45,000.00 as required by law.[1] Four names appeared as potential indemnitors on this bond: Milburn J. Ducote, Howard J. Ducote, Earl A. Noble, Sr., and W. J. Tatman. On March 10, 1969, Travelers issued a bond pursuant to the application. On July 3, 1969, Earl A. Noble, Sr., one of the offered indemnitors on the bond application died, and was survived by his wife, Mrs. Cecile Seitz Noble and his son, Earl A. Noble, Jr. On December 15, 1971, Travelers secured a second bond application, identical in every respect to the first application, bearing the signatures of Milburn J. Ducote, Howard Ducote, W. J. Tatman, Donald Perkins, Gerald Wood and W. J. Tatman as president of Eunice Packing Co., Inc. as offered indem-nitors. The number of the bond then outstanding since 1969 was placed on the application, and the outstanding bond remained continuously in force until its cancellation by Travelers in 1974.
As a result of the filing of claims totall-ing an amount in excess of $78,000.00 against Milburn Ducote for his failure to pay monies due for the sale of livestock sold for account of the various claimants, Travelers had to pay the penal sum of the bond, $45,000.00, to Forest Henderson, Trustee for the State of Louisiana in May of 1974. Travelers sought indemnity from all parties signatory to both the 1969 and 1971 bond applications, including the heirs of Earl A. Noble, Sr.
Default judgments were obtained against Milburn J. Ducote, Howard Ducote and Gerald Wood in solido for the sum of $45,-000.00 plus $4,500.00 in attorney’s fees. No appeal has been taken from this judgment. The Noble heirs filed a Motion for Summary Judgment, alleging that the death of their ancestor operated to discharge them from all liability in the instant action, which motion was denied by the trial court. Following a trial on the merits, the trial court rendered judgment in favor of Travelers against Donald Perkins, Mrs. Cecile Seitz Noble, Earl A. Noble, Jr., W. J. Tatman and Eunice Packing Co., Inc. in solido for the amount of $45,000.00 and $4,500.00 in attorney’s fees. Donald Perkins, the Noble heirs and W. J. Tatman have appealed this judgment, denying liability to Travelers on various bases to be herein separately considered. Eunice Packing Co., Inc. has not appealed and the judgment against this defendant is now final.
I. LIABILITY OF DONALD PERKINS
Mr. Perkins seeks to escape liability as an indemnitor on two stated grounds: First, that he did not knowingly execute any agreement concerning a bond to be issued to Milburn J. Ducote, as principal; and, secondly, if it be found that he did in fact knowingly execute the bond application of December 15, 1971 it constituted a mere offer of indemnity which was not accepted and if accepted no notice of acceptance was ever communicated to him.
Mr. Perkins’ signature appears only on the 1971 bond application. Although Mr. Perkins did not categorically deny having signed the bond application, he asserts that if the instrument does bear his signature, such signature was procured through illegality, fraud or duress. As he has no recollection whatever of the actual circumstances surrounding the signing of the applica *1122 tion, however, he was unable to indicate what illegal actions were actually taken in order to induce him to sign the instrument. He was likewise unable to produce evidence to establish that the signature on the instrument is not his.
While Mr. Perkins was perhaps unaware of the full import of the proposed continuing indemnity agreement, he was unable to establish that such error resulted in any measure from fault or misrepresentation on the part of Travelers or its agent, The Coco Agency. There being no ambiguity in the terms of the agreement, it must be presumed that Perkins knew of its contents. Shell v. Union Sawmill Co., 159 La. 604, 105 So. 728 (1925); St. Landry Loan Company v. Avie, 147 So.2d 725 (La.App. 3rd Cir. 1962); Trinity Universal Insurance Company v. Good, 202 So.2d 379 (La.App. 4th Cir. 1967), writ ref. 251 La. 396, 204 So.2d 575.
Mr. Perkins also asserts that the 1971 bond application constituted only an offer by the proposed indemnitors, which was never accepted by Travelers. It is urged that no new bond was ever issued in response to this later offer, and that issuance of a new bond would have been a necessary prerequisite to a valid acceptance on Travelers’ part. We do not agree.
LSA-C.C. Article 1811 provides:

“The proposition as well as the assent to a contract may be express or implied: Express when evinced by words, either written or spoken;

Implied, when it is manifested by actions, even by silence or by inaction, in cases in which they can from circumstances be supposed to mean, or by legal presumption are directed to be considered as evidence of an assent.”

The record indicates that on March 10, 1969, a bond was issued by Travelers, apparently in response to the bond application of March 3, 1969. The record further indicates that sometime after hearing of the death of one of the original proposed in-demnitors (Earl Noble, Sr.), Travelers sought replacement indemnity to secure the outstanding bond. It is ostensibly for this purpose that the 1971 application was submitted to Travelers containing the names of new proposed indemnitors. Since the continuous maintenance of a bond was statutorily mandated in order for Ducote’s business to remain in operation, and since the 1971 application referred to the same bond number which appeared on the bond then outstanding since 1969, it is clear that only one bond was issued and continuously maintained by Travelers until its cancellation in 1974. We find that Travelers’ action in allowing the bond to remain continuously in force signified its satisfaction with the security offered by the new indemnitors, and constituted a valid acceptance of the indemnity offer within the intendment of LSA-C.C. Article 1811.
We find, however, no evidence in the record to indicate that when Travelers’ accepted the 1971 offer of indemnity, it apprised Mr. Perkins of its acceptance until nearly three years later when it cancelled the bond and sought remuneration from him. Mr. Perkins testified at trial as follows:

“Q. Mr. Perkins, were you ever requested by anyone, and if so, whom, to furnish any kind of a financial statement?

A. No sir .

Q. And, prior to the letter in June of 1974, had you ever had any kind of contact, and if so, what was the nature of that contact, with Travelers Indemnity Company with reference to this bond.

A. I ain’t never had any.”

Although Travelers produced letters from other indemnitors on the bond, namely Howard Ducote and Wilson Tatman, stated that they understood that a bond had been issued by Travelers on behalf of Milburn Ducote, which they could ultimately be held liable on, Travelers failed to produce such a letter from Mr. Perkins. In sum, no evidence was offered on behalf of Travelers to refute Mr. Perkins’ contention that he was never apprised of Travelers’ issuance of a bond on behalf of Milburn Ducote and its acceptance of his indemnity offer.
LSA-C.C. Article 1797 provides:

*1123
“When the parties have the legal capacity to form a contract, the next requisite to its validity is their consent. This beins: a mere operation of the mind, can have no effect, unless it be evinced in some manner that shall cause it to be understood by the other parties to the contract. To prevent error in this essential point, the law establishes, by certain rules adapted to the nature of the contract, what circumstances shall be evidence of such consent, and how those circumstances shall be proved; these come within the purview of the law of evidence.” (Emphasis added)

LSA-C.C. Article 1809 provides:

“The obligation of a contract not being complete, until the acceptance, or in cases where it is implied by law, until the circumstances. which raise such implication, are known to the party proposing: he may therefore revoke his offer or proposition before such acceptance, but not without allowing such reasonable time as from the terms of his offer he has given, or from the circumstances of the case he may be supposed to have intended to give to the party, to communicate his determination.” (Emphasis added)

LSA-C.C. Article 1819 provides:

“Consent being the concurrence of intention in two or more persons, with regard to a matter understood by all, reciprocally communicated, and resulting in each party from a free and deliberate exercise of the will, it follows that there is no consent, not only where the intent has not been mutually communicated or implied.

as is provided in the preceding paragraph, but also where it has been produced by—

Error;

Fraud;

Violence;

Threats.” (Emphasis added)

A necessary prerequisite to the confection of a contract in this state is the communication of the offeree’s acceptance of the offer- or’s offer, be it express or implied from the circumstances of the transaction.[2]
Travelers urges that the submission of the bond application produced an “execu-tory contract” between the parties which did not require acceptance by Travelers. We disagree, and find that mere submission of a self-styled “Application” for a bond produced no manner of contract, but was rather an application for a bond coupled with an offer of indemnity subject to acceptance by Travelers.
The record indicates that prior to 1974, there was no direct contact between Perkins and Travelers with regard to this bond. The record likewise raises considerable doubt as to whether there was even direct contact between the parties at the time that the bond application was actually signed by Perkins. The instrument is entitled an “Application”, and the following language from the application further supports the conclusion that perfection of the agreement was solely at the discretion of Travelers:

“SHOULD The Travelers Indemnity Company . . . execute, or procure the execution of the suretyship hereinbe-fore applied for ... the undersigned . . jointly and severally and for each other undertake and agree . ” (Emphasis added)

In addition, the record indicates that after securing the 1971 application, Travelers sought financial statements on at least some of the proposed indemnitors. The terms of the instrument in no way placed upon Travelers the obligation of allowing the existing bond to remain in force or of issuing a new one upon receipt of the application.
In principle, this proposed agreement of indemnity is much like an offer of guaranty, whereby one offers to reimburse another for losses incurred through the actions of a third party.
In the early U.S. Supreme Court case of Davis Sewing Machine Co. of Watertown, N. Y. v. Richards and another, 115 U.S. 524, 6 S.Ct. 173, 29 L.Ed. 480 (1885), the Court considered the question of the necessity of giving notice to the potential guarantor
*1124 that his offer of guaranty had been accepted. Therein the Court stated:

“The decision of this case depends upon the application of the rules of law stated in the opinion in the recent case of Davis v. Wells. 104 U.S. 159, 26 L.Ed. 686, in which the earlier decisions of this court upon the subject are reviewed. Those rules may be summed up as follows: A contract of guaranty, like every other contract, can only be made by the mutual assent of the parties. If the guaranty is signed by the guarantor at the request of the other party, or if the latter’s agreement to accept is contemporaneous with the guaranty, or if the receipt from him of a valuable consideration, however, small, is acknowledged in the guaranty, the mutual assent is proved, and the delivery of the guaranty to him or for his use completes the contract. But if the guaranty is signed by the guarantor without any previous request of the other party, and in his absence, for no consideration moving between them except future advances to be made to the principal debtor, the guaranty is in legal effect an offer or proposal on the part of the guarantor, needing an acceptance by the other party to complete the contract.” 6 S.Ct. 173 at p. 175

The courts of this state have likewise recognized that there is a distinction to be drawn between an offer to become a guarantor, which requires notice of acceptance by the guarantee to the guarantor to complete the contract, and a direct promise or guaranty, whereby the notice is either expressly or impliedly waived. In People’s Bank of New Orleans v. Lemarie, 106 La. 429; 31 So. 138 (1901), our Supreme Court stated:

. . care should be taken to mark the difference between a perfect guaranty and the mere offer to become a guarantor. In the former case no formal acceptance is necessary. In the latter the offer or tender of guaranty must be accepted, and the acceptance notified to the offerer, in order that it may become a binding contract.” at p. 139

In Texas Company v. Hudson et aL, 155 La. 966, 99 So. 714 (1924) the Court stated:

“A contract of guaranty, like any other contract, requires the mutual consent of the parties. An offer to guarantee the payment of a credit to be extended to a third party is not binding upon the party making the offer until it is accepted by the party to whom the offer is made and until the party making it is notified of its acceptance. Bank of Illinois v. Sloo & Byrne, 16 La. 539, 35 Am.Dec. 223; Lachman & Jacobi v. Block & Bro., 47 La.Ann. 505, 17 So. 153, 28 L.R.A. 255; Douglass v. Reynolds, Byrne & Co., 7 Pet. 113, 8 L.Ed. 626; and Davis Sewing Machine Co. v. Richards, 115 U.S. 524, 6 S.Ct. 173, 29 L.Ed. 480. To the same effect, see Louisiana & Western Ry. Co. v. Dillard, 51 La.Ann. 1484, 26 So. 451; People’s Bank v. Lemarie, 106 La. 429, 31 So. 138; Heitmann & Co. v. K. C. S. Ry. Co., 136 La. 825, 67 So. 895; Hibernia Bank & Trust Co. v. Succession of Cancienne, 140 La. 969, 74 So. 267, L.R.A. 1917D, 402; and Davis v. Wells Fargo & Co., 104 U.S. 159, 26 L.Ed. 686.” at pp. 715-716

We find the above stated principles to be likewise applicable to the instant offer of indemnity. Mr. Perkins was entitled to timely notification that a bond had been issued on behalf of Milburn J. Ducote pursuant to the application filed by him and that the former’s offer of indemnity had been thereby accepted. The record reflects no notification of any kind and in fact no contact whatever between Travelers and Perkins following the latter’s execution of the offer on December 15,1971 until receipt by Perkins of Traveler’s demand letter in June of 1974. Under these circumstances it cannot be said that the offer of indemnity was still viable. Although under R.C.C. Article 1801 the party proposing is presumed to continue in the intention which his proposal expressed, a party seeking to avail itself of the terms of this article must make its acceptance known within a reasonable time. Parish of East Baton Rouge v. Industrial Enterprises, Inc., et al., 340 So.2d *1125 367 (La.App. 1st Cir. 1976). For the above reasons we find that Perkins cannot now be held liable on the basis of the offer of indemnity dated December 15,1971 and the trial court erred in rendering judgment against him.
II. LIABILITY OF MRS. CECILE SEITZ NOBLE AND EARL NOBLE, JR.
The trial court found liability on the part of Cecile Seitz Noble and Earl Noble, Jr. as heirs of Earl Noble, Sr., who had signed the 1969 bond application. The elder Noble died on July 3, 1969, nearly three months after Travelers had issued the bond herein in dispute. Among other arguments raised on appeal, it is urged that neither Earl Noble, Sr. nor his heirs were ever notified by Travelers that it had issued a bond pursuant to his offer of indemnity, and that as a consequence there could be no liability on the part of appellants. We find merit to this argument and reverse the trial court’s decision insofar as it finds liability on the part of Mrs. Cecile Seitz and Earl Noble, Jr.
For the reasons already stated, we have found that without notification by Travelers to the potential indemnitors of its intention to issue a bond on the strength of their offer of indemnity, there could be no contract of indemnity upon which to base liability. Earl Noble, Jr. testified at trial that he never received notification from Travelers concerning the issuance of a bond until after the institution of the instant suit. He testified that to his knowledge, neither his mother nor father received such notification either. Of course appellants’ allegations rest upon the proof of a negative — that Earl Noble, Sr. never received notice of acceptance by Travelers. While the general rule of evidence pertaining to the proof of a negative places the burden on the party seeking to prove such fact, there is an exception drawn when the matter is peculiarly within the knowledge of the adverse party. McNeely v. U. S. Fidelity and Guaranty Co., 69 So.2d 600 (La.App. 2nd Cir. 1953); 31A C.J.S. Evidence §§ 112-113.
In light of the fact that Earl Noble, Sr. could not testify before the court, the party most cognizant of the facts necessary to decide this issue was Travelers. Mr. Andre Coco, Travelers agent, testified that it was not the general practice for potential indemnitors to be notified of the acceptance of their offer. Mrs. Ivy Jones, presently an underwriter for Travelers, testified that the only notice sent out pertaining to Earl Noble, Sr.’s liability on this bond was a letter dated January 30,1975, notifying the Noble heirs that payment on the bond had already been made by Travelers. Mrs. Jones further testified:

“Q. Would it be a fair statement, then, that there was no notice issued by Travelers Indemnity to Earl Noble, Sr.?

A. I believe it would be.”

The record is otherwise void of any evidence to indicate that Travelers made any attempt to contact Earl Noble, Sr. until nearly six years after he offered to hold Travelers harmless should a bond be issued on Milburn Ducote’s behalf. We find, therefore, that no valid contract of indemnity existed between Travelers and Earl Noble, Sr. at the time of his death, and that consequently Travelers has no valid claim against his heirs. Since we find Travelers’ failure to give timely notice to Earl A. Noble, Sr. of acceptance of his offer to be dispositive of the issue of the liability of the Noble heirs, we deem it unnecessary to consider the additional arguments raised in appellants’ brief.
III. LIABILITY OF WILSON J. TAT-MAN
Appellant, Wilson J. Tatman, neither appeared nor filed a brief in this case prior to the time the case was called for oral argument. Pursuant to Rule VII, Section 5(b), Uniform Rule, Courts of Appeal, we consider his appeal abandoned and dismiss same at his cost.
For the above and foregoing reasons the judgment of the trial court is reversed insofar as it imposes liability upon Donald Perkins, Mrs. Cecile Seitz Noble and Earl A. Noble, Jr. and accordingly, it is ordered, adjudged and decreed that there be judg *1126 ment in favor of Donald Perkins, Mrs. Cecile Seitz Noble and Earl A. Noble, Jr. and against Travelers Indemnity Company, dismissing plaintiff’s suit against said defendants. All costs of this appeal are to be paid by Travelers Indemnity Company.
REVERSED AND RENDERED.

. LSA-R.S. 3:565 in part provides:
“Every market agency and dealer shall, on or before the date of commencement of operations, execute and thereafter maintain, or cause to be executed and maintained, a bond payable to the executive secretary of the Louisiana [State] Livestock Sanitary Board for the use and protection of livestock producers, shippers, or purchasers, to secure the performance of their obligations incurred as a market agency or dealer, and shall immediately file with the executive secretary of the Louisiana State Livestock Sanitary Board a fully executed duplicate of the bond. The surety on the bond shall be a surety company approved and authorized to do business in Louisiana. In the event that an applicant for a permit is unable to secure bond the Louisiana State Livestock Sanitary Board may accept a deposit with it of a cash amount equal to the amount of the bond required . . ”

. S. Litvinoff, Louisiana Civil Law Treatise, Volume 6, Obligations Book I, § 161 (1969).