380 So.2d 10 (1979)
TRAVELERS INDEMNITY COMPANY
v.
Milburn J. DUCOTE et al.
No. 64331.
Supreme Court of Louisiana.
October 8, 1979.
On Denial of Rehearing January 11, 1980.
*11 J. Michael Percy, Ledbetter, Percy & Stubbs, Alexandria, for plaintiff-applicant.
Roy B. Tuck, Jr., Leesville, for defendant-respondent, Donald D. Perkins.
Stephen C. Kogos, New Orleans, for defendant-respondent, Mrs. Cecile Seitz Noble and Earl Alphonse Noble, Jr.
DENNIS, Justice.
The crucial question in this suit by a surety company on an indemnity contract is factual: Did the defendants, who offered to become indemnitors, impliedly waive notice of acceptance of their offer by the plaintiff surety company? The court of appeal, in reversing the trial court's judgment for the surety company, found that communication of acceptance had not been waived by the offerors. Accordingly, the intermediate court held that the defendants were not bound as indemnitors because the surety company failed to notify them of its acceptance of their offers. We reverse and reinstate the trial court decree. Waiver of notification of acceptance was implied by the terms of the offer and the situation of the parties.
The opinion of the court of appeal, 368 So.2d 1119 (La.App.3d Cir. 1979), skillfully sets forth the facts of the case:
"On March 3, 1969 Milburn J. Ducote d/b/a Avoyelles Livestock Auction Market and Deridder Livestock Market, Mansura, Louisiana applied to Travelers for a performance bond in the sum of $45,000.00 as required by law. [All market agencies and livestock dealers are required by La.R.S. 3:565 to maintain a bond payable to the Louisiana State Livestock Sanitary Board or deposit a cash amount equal to the amount of the required bond.] Four names appeared as potential indemnitors on this bond: Milburn J. Ducote, Howard J. Ducote, Earl A. Noble, Sr., and W. J. Tatman. On March 10, 1969, Travelers issued a bond pursuant to the application. On July 3, 1969, Earl A. Noble, Sr., one of the offered indemnitors on the bond application died, and was survived by his wife, Mrs. Cecile Seitz Noble and his son, Earl A. Noble, Jr. On December 15, 1971, Travelers secured a second bond application, identical in every respect to the first application, bearing the signatures of Milburn J. Ducote, Howard Ducote, W. J. Tatman, Donald Perkins, Gerald Wood and W. J. Tatman as president of Eunice Packing Co., Inc. as offered indemnitors. The number of the bond then outstanding since 1969 was placed on the application, and the outstanding bond remained continuously in force until its cancellation by Travelers in 1974.
"As a result of the filing of claims totalling an amount in excess of $78,000.00 against Milburn Ducote for his failure to pay monies due for the sale of livestock sold for account of the various claimants, Travelers had to pay the penal sum of the bond, $45,000.00, to Forest Henderson, Trustee for the State of Louisiana in May of 1974. Travelers sought indemnity from all parties signatory to both the 1969 and 1971 bond applications, including the heirs of Earl A. Noble, Sr.
"Default judgments were obtained against Milburn J. Ducote, Howard Ducote and Gerald Wood in solido for the sum of $45,000.00 plus $4,500.00 in attorney's fees. No appeal [was] taken from this judgment. The Noble heirs filed a Motion for Summary Judgment, alleging that the death of their ancestor operated to discharge them from all liability in the instant action, which motion was denied by the trial court. Following a trial on the merits, the trial court rendered judgment in favor of Travelers against Donald Perkins, Mrs. Cecile Seitz Noble, Earl A. Noble, Jr., W. J. Tatman and Eunice Packing Co., Inc. in solido for the amount of $45,000.00 and $4,500.00 in attorney's *12 fees. Donald Perkins, the Noble heirs and W. J. Tatman ... appealed this judgment, denying liability to Travelers on various bases.... Eunice Packing Co., Inc. [did not appeal] and the judgment against this defendant is now final." 368 So.2d at 1121. [footnotes omitted]
The court of appeal reversed the trial court judgment insofar as it imposed liability upon Donald Perkins, Mrs. Cecile Seitz Noble and Earl Noble, Jr. and dismissed Tatman's appeal as having been abandoned.
Contrary to our initial impression in granting writs that the court of appeal had misstated the pertinent legal principles in its opinion, we substantially agree with the intermediate court's scholarly explication of the law. We find, nevertheless, that the court of appeal was clearly in error in its determination that notice of acceptance had not been impliedly waived by the indemnitors.
The parties may impliedly consent to the formation of a contract by the offeree's acceptance of an offer without notifying the offeror of his acceptance. La.C.C. art. 1819. This is an exception to the general rule that the acceptance of an offer must be communicated to the offeror. La.C.C. arts. 1809, 1819. See 1 Litvinoff, Louisiana Civil Law TreatiseObligations, § 161 et seq. (1969).
As noted by the court of appeal, Louisiana courts, in deciding whether to enforce a contract of guaranty, which is similar to a contract of indemnity, have distinguished between an offer to become a guarantor, which requires notice of acceptance by the guarantee, and a direct promise of guaranty, whereby notice is either expressly or impliedly waived. Texas Company v. Hudson, et al., 155 La. 966, 99 So. 714 (1924); Hibernia Bank and Trust Co. v. Succession of Cancienne, 140 La. 969, 74 So. 267 (1917); People's Bank v. Lemarie, 106 La. 429, 31 So. 138 (1901); Siben v. Green, 8 So.2d 706 (La.App.Orl. Cir. 1942). In essence, this jurisprudential expression is consistent with the civil code scheme, as well as French[1] and Louisiana doctrine.[2] Under either the jurisprudential or codal-doctrinal analysis, the decisive question is whether, according to the intention of the parties, it was necessary to the formation of a contract that the acceptance be made known to the offeror.
In their offer of indemnity the defendants directly and absolutely promised that, if Travelers issued a performance bond for Ducote, they would hold Travelers harmless from liability on the bond. The defendants, in the application for bond signed by them, in pertinent part, stated:
"Should the Travelers Indemnity Company... execute, or procure the execution of the suretyship hereinbefore applied for, or other suretyship in lieu thereof, the undersigned ... do in consideration thereof, jointly and severally and for each other undertake and agree:

"* * *
"* * * [t]hat each and every one of the Indemnitors will perform all the conditions of said bond, and any and all modifications, renewals and extensions thereof, or any bond in lieu thereof, and will at all times indemnify and save the *13 Company harmless from and against every claim, demand, liability, cost, charge, counsel fee (including fees of special counsel whenever by the Company deemed necessary) expense, suit, order, judgment and adjudication whatsoever, and will place the Company in funds to meet the same before it shall be required to make payment, and in case the Indemnitors request the Company to join in the prosecution or defense of any legal proceeding, the Indemnitors will, on demand of the Company, place it in funds sufficient to defray all expenses and all judgments that may be rendered therein." [emphasis supplied]
The literal wording of the written offer indicates that the defendants agreed unconditionally to be bound upon the issuance of the performance bond and did not expect notification of acceptance. The defendants did not present any testimony as to a contrary intention, refusing even to acknowledge the authenticity of the indemnitors' signatures on the offer. The circumstances and situation of the parties also imply that communication of acceptance was not necessary to the formation of the indemnity agreement. The amount of the bond and the maximum exposure of the indemnitors to liability were fixed in the offer. The indemnitors knew that the bond would either be issued on these terms or refused. They were in a position to learn from Milburn Ducote whether the bond was issued. Among them were an employee and a customer of Ducote. The record does not reflect the exact relationship the other indemnitors had with Ducote but it appears that they were all his friends or business associates. It is likely the indemnitors expected that Ducote would inform them whether the performance bond, which was essential to the lawful operation of his business, had been issued. Considering all of the circumstances, and the unconditional language of the offer, we conclude that the parties consented to the formation of a contract by the issuance of a bond as described in the offer without the necessity of notification of acceptance.
Alternatively, the Noble heirs contend that the obligation of Earl A. Noble, Sr. was extinguished by novation when the surety company, following his death, secured a second indemnity agreement from the remaining indemnitors and others. However, the record does not support their contentions. Novation is a contract, consisting of two stipulations; one to extinguish an existing obligation, the other to substitute a new one in its place. La.C.C. art. 2185. Novation can be made only by persons capable of contracting; it is not presumed; and the intention to make it must clearly result from the terms of the agreement, or by a full discharge of the original debt. La.C.C. art. 2190. The evidence in this case does not indicate that the surety company intended to extinguish the Noble obligation and substitute another in its place. Although Mr. Noble's death may have prompted the company to obtain additional indemnitors, there is no evidence that the company intended to extinguish the existing obligation or substitute a new one in its place.
The remaining issues which have been raised by the parties were decided correctly by the court of appeal.
For the reasons set forth, we reverse the judgment of the court of appeal and reinstate the trial court judgment.
REVERSED; TRIAL COURT JUDGMENT REINSTATED.

ON APPLICATION FOR REHEARING
PER CURIAM.
In their application for rehearing, the heirs of Earl Noble, Sr. complain that our original opinion failed to address their argument that Earl A. Noble, Sr.'s death extinguished any liability which he or his heirs may have had as indemnitors. We did omit mention of the issue in our original opinion, failing to notice that the issue had not been decided in the court of appeal opinion. After considering the argument, however, we conclude that it has no merit.
The Civil Code provides that every obligation shall be deemed to be heritable as to *14 both parties, unless the contrary be specially expressed, or necessarily implied from the nature of the contract. La. C.C. art. 1999. According to Planiol, the same rule is expressed in the French Code Civil. He observes:
"In general contracts survive those who make them, and their effects active and passive are transmitted to the heirs (Art. 1122). By way of exception certain contracts made in consideration of the person of the creditor or of the debtor come to an end by the death of such person. These contracts are very few in number, we can cite:
(1) Contracts for hiring out work which ends by the death of the workmen or of the employee (Art. 1795);
(2) The contract of work by the job which terminates by the death of the workman employed for the purpose (Art. 1795);
(3) The partnership which terminates, except in the case of partnerships `of capital,' by the death of one of the partners (Art. 1865(3)). It can be agreed, however, that the partnership will continue with the heirs of the deceased partner (Art. 1868);
(4) The mandate which is extinguished by the death of the principal or of the mandatary (Art. 2003)." Planiol, Traite Elementaire de Droit Civil, Vol. 2, pt. 1, § 1332, p. 755 (11th ed. 1938).
The contract of indemnity in the present case does not specially express that the heirs or the indemnitors are released from liability by the death of their ancestor. Also, the indemnitors' obligation is not strictly personal, and its nature is not necessarily inconsistent with heritability.
Accordingly, the application for rehearing is denied.
NOTES
[1] See 1 Litvinoff, Louisiana Civil Law TreatiseObligations, § 154.
[2] In his Treatise on Obligations, Professor Litvinoff states:

"The necessity of communicating the acceptance has been especially discussed in Louisiana jurisprudence in reference to the area of offers of a guaranty. As in other contracts, the general rule is that the acceptance of such an offer must be communicated to the offeror. However, if the offer of guaranty is limited to a presently existing debt or to a specific future debt, there are three situations in which the acceptance need not be communicated: (1) The circumstances of the case prove that there was an express mutual assent by the parties at the time of the offer. (2) The relation of the parties proves that the offeror must have known that his offer would be relied upon. (3) The terms of the offer evidence that no communication is required. If the offer is of a prospective and continuing guaranty, notification of acceptance must be given unless from the terms of the offer or the situation of the parties, waiver can be implied. Ibid. § 166. [footnotes omitted]